[Crim. No. 18822. Second Dist., Div. One. May 10, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM JOSEPH SCHOMER, Defendant and Appellant.

**COUNSEL**

Walshin & LaRocca and Phillip LaRocca for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Maury W. Corn, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—After submission of the cause on the transcript of the testimony taken at the preliminary hearing and hearing on motion under section 1538.5, Penal Code, and the exhibits, defendant was found guilty of unlawful possession of marijuana (§ 11530, Health & Saf. Code) and restricted dangerous drugs (§ 11911, Health & Saf. Code). He appeals from the judgment (order granting probation).

Around 10:30 p.m. on January 16, 1969, Officer Loder received information from his station regarding Jean Lindstrom, 14 years of age, a runaway juvenile; a signed missing person report was on file; her mother had advised police that the girl might be at 7818½ Gilliland, that one or two hours before she had been allowed to search those premises for her daughter but had not found her, that to the best of her knowledge her daughter was on the premises and that she had not made a complete search when she went there.

In company with Deputy Witt and his partner, Officers Loder and Mc-Arthur went to the premises; the officers told Deputy Witt there was a possible runaway juvenile named Jean Lindstrom, 14 years old, at 7818½ Gilliland, the owner of the apartment was an adult and there was a possibility of narcotics there. As Deputy Witt and his partner walked to the rear they met defendant walking toward them; he told defendant they were looking for a missing juvenile by name of Lindstrom and asked his name and where he lived; defendant supplied the information and said he lived at 7818½ Gilliland. Deputy Witt asked him if he knew Jean Lindstrom; defendant said he did, he had met her and another girl the previous evening while they were hitchhiking, the two girls had been in his apartment all night and Jean had left in the morning. The deputy accompanied defendant back to his apartment; the apartment door was ajar when they arrived. Deputy Witt informed defendant that because of the age of the Lindstrom girl and the possibility she was still hiding in his apartment it would be necessary to conduct a search; defendant said "go ahead." The deputy entered accompanied by defendant. He looked in the living room, then in the bedroom in which was a walk-in type closet with sliding door; he looked at the closet but defendant told him the girl was not there and (defendant) pulled the door open; the deputy saw what he thought to be female clothing and asked to whom it belonged; defendant replied it was his; defendant then pushed the clothes aside at which time the deputy saw a box 2′ x 2′ x 2′ in the bottom of the closet, the sole contents of which were two plastic bags containing marijuana (52 grams). Defendant was placed under arrest. The deputy continued to search for the juvenile but was unable to find her, then searched for additional contraband; he found more marijuana and a large quantity of various restricted dangerous drugs.

Defendant testified he had been in bed, heard a noise outside "like several cars," got up and went out closing but not locking the door; he met four uniformed armed officers; even though he said Jean had not been there since the night before, Deputy Witt, after searching him, took him by the arm to the door; defendant accompanied him because he thought it would be advisable to do so considering that he was armed with a deadly weapon; there were two officers standing by the half open door although he had left the door securely closed; the deputy told him that due to the age of the person who was missing it would be necessary to search the apartment; he did not say anything and the deputy just walked into the apartment and he followed; once inside the officers searched the living room and when they searched behind couches, underneath the sofa and in small drawers, he asked them what they were looking for and the officer replied he was looking for a juvenile; he told the officers to leave the apartment because he believed the search was illegal; again he repeated the demand but they

continued to search; Deputy Witt directed him to the bedroom, opened the closet door and looked inside; the deputy asked if the clothes were his and he said they were, then started looking through the closet; the clothes cleared the floor by about three feet and almost the entire closet was visible and anyone standing therein would have been seen; the deputy shined his flashlight into the corner and saw a box in which he found two plastic bags of marijuana; meanwhile a search was being made of other parts of the apartment where some more marijuana and restricted drugs were found. The court then questioned the defendant; his answers disclosed that defendant had no objection to the search by Jean's mother and gave her permission; that he had no objection to the officers' search of the apartment for the minor 20 minutes later and objected "only after they got inside the apartment and began searching in the manner that they did."

Appellant raises two issues, (1) Deputy Witt had no probable cause to believe the minor was on the premises and whatever information he had came to him through "unreliable channels or persons" and (2) there was no valid consent to enter and search the premises. We deal first with the matter of consent, and our conclusion on this issue based on the record before us is dispositive of the appeal.

 A search without a warrant is lawful if made with the valid consent of the party whose person or property is the subject of the search. (*People v. Smith,* 63 Cal.2d 779, 798 [48 Cal.Rptr. 382, 409 P.2d 222]; *People v. Burke,* 47 Cal.2d 45, 49 [301 P.2d 241].) Appellant predicates his argument that there was no valid consent for the officer to enter and search, on the premise that when Deputy Witt, who was armed and in uniform, told him that because of the age of the Lindstrom girl and the possibility she was still in his apartment it would be necessary to conduct a search, his response, "go ahead," was a submission to authority and not freely and voluntarily given. Without more, under language found in *Parrish v. Civil Service Commission,* 66 Cal.2d 260, 269 [57 Cal.Rptr. 623, 425 P.2d 223], a serious question might arise concerning whether consent given under such circumstance was the result of a peaceful submission to a law enforcement officer; however, defendant himself convinced the trial judge that in fact it was not. On the witness stand the judge asked defendant several questions which establish first, that 20 minutes before the deputies arrived Jean's mother searched his apartment to which he had no objection and "gave her permission, yes, sir"; and second, that when the deputy told him it would be necessary to conduct a search and he answered, "go ahead," in fact he had no objection and gave his voluntary permission thereto, and

it was only later in the process of the search when it became obvious they were about to discover the contraband that he objected.[1]

Defendant consented to a search of his apartment and the judge so found: "I believe he did [give consent]. I believe his testimony is that he had no objection." The testimony of Deputy Witt differs slightly from that of the defendant in this connection. When the deputy told defendant that because of the age of the Lindstrom girl and the possibility she was still hiding in his apartment it would be necessary to conduct a search, Deputy Witt testified defendant answered, "go ahead," while defendant testified that he said nothing. ■ Whether consent was given is a question of fact for the trial judge. (*Castaneda* v. *Superior Court,* 59 Cal.2d 439, 442 [30 Cal.Rptr. 1, 380 P.2d 641].)

■ As to the validity of that consent, the record shows that it was unaffected by the presence of the uniformed officers. In this connection the judge said, "Well, he is attempting, in one breath, to tell the Court he is submitting to the guns and the overwhelming force of four officers when, in truth and in fact, he had no objection to their coming in and searching the same as the mother did. As long as they didn't get close to the narcotics." Again, in this case whether consent was freely and voluntarily given is an issue of fact to be resolved by the trial judge. (*People* v. *Carrillo,* 64 Cal.2d 387, 392-393 [50 Cal.Rptr. 185, 412 P.2d 377]), and the evidence amply supports the finding that the consent was valid and not granted in submission to an express or implied assertion of authority. ■ "The fact that an officer of the law is the person seeking to search the premises does not, in and of itself, render such consent involuntary." (*People* v. *Ortiz,* 210 Cal.App.2d 489, 498 [26 Cal.Rptr. 677]; *People* v. *Linke,* 265 Cal.App.2d 297, 314 [71 Cal.Rptr. 371].) This is borne out by language found in *Parrish* v. *Civil Service Commission,* 66 Cal.2d 260, at page 269 [57 Cal.Rptr. 623, 425 P.2d 223]: "As the court stated in *Judd* v. *United States* (D.C.Cir. 1951) 190 F.2d 649, 651, 'The Government must show a consent that is "unequivocal and specific" [citation], "freely and intelligently given." [Citation.] Thus "invitations" to enter one's house,

---

[1]"THE COURT: And you are now telling the Court that you object to the officers searching the apartment 20 minutes later?

"THE WITNESS: Only after they got inside the apartment and began searching in the manner that they did.

"THE COURT: Then, in other words, what you are really objecting to is a search for narcotics, but not for the girl?

"THE WITNESS: Well, a search for narcotics would be illegal at that point.

"THE COURT: Yes, but you object to the search for narcotics but you did not object to the search of the apartment for the minor?

"THE WITNESS: No I didn't."

extended to armed officers of the law who demand entrance, are usually to be considered as invitation secured by force. [Citation.] A like view has been taken where an officer displays his badge and declares that he has come to make a search [citation], even where the householder replies "All Right." [Citation.] . . . *Intimidation and duress are almost necessarily implicit in such situations; if the Government alleges their absence, it has the burden of convincing the court that they are in fact absent.'* (Accord, *Channel* v. *United States* (9th Cir. 1960) 285 F.2d 217, 219-221.)" (Italics added.) It should be noted that in *Parrish* it was unnecessary for the court to determine the issue present herein; it held that the legal effect of the apparent consent of guardians of needy children on welfare relief to such a search (for the presence of cohabiting "unauthorized males") was nullified by the fact that although the searchers were told not to force their way in the guardians knew that their livelihood depended to a high degree on the continued favor of their social workers and a refusal of entry would serve as a basis for terminating their welfare benefits (pp. 270-271).

 The record herein reflects an absence of the intimidation or duress the language in *Parrish* says "are almost necessarily implicit in such situations." There is nothing to show that the deputies unholstered their guns or engaged in any potentially coercive or threatening action. *(People* v. *Harrington,* 2 Cal.3d 991, 997 [88 Cal.Rptr. 161, 471 P.2d 961].)* While Deputy Witt testified he had not placed him under arrest but would not have permitted defendant to walk away at that time, there is no evidence that he communicated this to defendant or that defendant knew this at the time he gave his consent. Moreover, defendant actually had no fear of the officers for he readily testified that twice during the search he demanded that the officers leave his apartment. But of controlling significance is defendant's own admission in open court that he had no objection to the search at the outset and before entry to his apartment nor did he have objection during the search until he realized that in all probability his contraband would be discovered; then according to him he demanded that the officers leave. The foregoing and defendant's admission that 20 minutes earlier he had willingly given permission to Jean's mother to search the premises support the finding that the fact that a uniformed deputy said it would be necessary to conduct a search is not sufficient to vitiate the affirmative response by defendant, and the circumstances do not nullify the effectiveness of the consent secured from him.

 A case similar on its facts is *People* v. *Harrington,* 2 Cal.3d 991 [88 Cal. Rptr. 161, 471 P.2d 961]. Therein the deputy went to defendants' apartment on information that a runaway juvenile was believed to be there and there might also be narcotics on the premises. Bobbie partially opened

the door when Deputy Winkler knocked; upon being advised they were seeking a juvenile named Sharon he said she was not there and began to walk onto the porch; the deputy asked if they could go inside and discuss the matter; Bobbie made no verbal response but stepped aside and made a gesture interpreted by the magistrate to indicate that he wanted the deputy to come inside. In the living room in plain sight was marijuana. Among other things, the court ruled that consent to enter may be expressed by actions as well as by words. Appellants contended that the deputy's purpose for coming to the residence to look for the missing juvenile was a mere pretext which vitiated any consent. The court held that under the circumstances the issue whether the entry was obtained by trickery, stealth or subterfuge which would render a search and seizure invalid was one of fact and of the credibility of witnesses, a matter for the trier of fact (p. 997). The court continued: "Defendants also contend that the fact Winkler was in uniform and had a gun, combined with his representation that he was searching for a missing juvenile, constituted coercion under the color of authority and implied that the occupants had no right to resist his entry. There is nothing to show, however, that Winkler ever unholstered his gun or engaged in any other potentially coercive or threatening action." (P. 997.)

In the search for the juvenile the officer came upon the box containing marijuana in the bottom of the closet; it came into plain sight when defendant himself pushed the clothing aside. The deputy had no duty to turn his head from evidence of another crime and was justified in seizing the contraband and arresting defendant therefor.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.