[Crim. No. 37416. Second Dist., Div. Four. Dec. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES THOMAS WILLIAMS, Defendant and Appellant.

68

**COUNSEL**

Saltzman & Warren and Alan Saltzman for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Weisman and Carla M. Singer, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS, J.**—Following the denial of his motion to suppress evidence, appellant pleaded guilty to violation of Penal Code section 288, lewd and lascivious acts upon a child under the age of 14. Appellant was placed on probation for a period of three years on condition that he serve one year in the county jail. On appeal, he challenges the propriety

of the court's order denying his suppression motion. His contentions in this respect are as follows:

1. His consent to search his vehicle was a product of coercion;

2. The consent given, even if voluntary, did not extend to closed areas of the vehicle or closed containers within those areas;

3. The request for consent to search appellant's storage locker violated his Sixth Amendment right to counsel.

I

Appellant first contends that a consent to search given by a person under arrest and subject to police authority is coerced as a matter of law, where no *Miranda* warnings were given prior to the request for consent. He cites *Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218 [36 L.Ed.2d 854, 93 S.Ct. 2041], for the proposition that such custodial *Miranda* warnings must be given. Appellant concedes that that case does not so hold, but argues that such a conclusion is mandated by implication in *Schneckloth*, where the court held that no such warnings are required to obtain valid consent from a subject not in custody. Appellant's position regarding the *Schneckloth* holding is not well taken. In *United States* v. *Watson* (1976) 423 U.S. 411, 424 [46 L.Ed.2d 598, 609, 96 S.Ct. 820], the United States Supreme Court extended the *Schneckloth* rule to the case of a defendant in police custody at the time his consent to search was requested. The California Supreme Court has unequivocally concluded that *Miranda* warnings are not necessarily required of a defendant in custody before a consent may be deemed voluntarily given. Nor is a warning of the right to refuse permission to search a precondition to a valid consent. (See, e.g., *People* v. *James* (1977) 19 Cal.3d 99, 115 [137 Cal.Rptr. 447, 561 P.2d 1135]; *People* v. *Ruster* (1976) 16 Cal.3d 690, 700 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].)

In the instant case, on January 26, 1979, Officer Francis Reilman was armed with an arrest warrant for defendant. Defendant drove his vehicle to an intersection in Glendale, parked the car and got out. Officer Reilman approached defendant, identified himself and told defendant he was under arrest. Defendant was patted down and handcuffed. Within a minute of having approached defendant, Reilman asked for permission to search his vehicle. He could not recall whether

the consent was requested before or after defendant was handcuffed. He asked defendant, "May I search your car?" Defendant "said something to the effect, 'Yes, go ahead.'"

Backup officers arrived on the scene and defendant was taken into custody. His car was towed to a nearby impound lot and searched, approximately 30 minutes after the initial stop. The items seized, of which defendant sought suppression, were found in brown bags or brown envelopes in the trunk of his car.

Officer Reilman testified that, when he approached defendant to arrest him, he drew his service revolver. He replaced his revolver in his holster when he handcuffed defendant. Defendant testified that at the time of his arrest he was nervous, upset and confused. He denied having given the officer consent to search his vehicle.

The trial court found that defendant consented to the search, and that, although a gun was drawn on him in the course of the arrest, the consent was voluntary.

The question of the voluntariness of consent is one of fact, to be determined by the trial court. The trial court's finding must be upheld if supported by substantial evidence. (*People* v. *James, supra*, 19 Cal.3d at p. 106; *People* v. *Reyes* (1974) 12 Cal.3d 486, 501 [116 Cal.Rptr. 217, 526 P.2d 225].)

"[D]efendant's custody at the time of giving consent to search is a circumstance which is of 'particular significance' but is 'not conclusive' in the determination of voluntariness. (*Castenada* v. *Superior Court* (1963) 59 Cal.2d 439, 443 [30 Cal.Rptr. 1, 380 P.2d 641].)" (*People* v. *James, supra*, 19 Cal.3d at p. 109.) Further, the fact that a defendant is under arrest and in handcuffs at the time a consent is given does not make a consent to search involuntary as a matter of law. It is but one factor to be considered by the trial judge who is in the best position to rule on the issue of voluntariness. (*People* v. *James, supra*, at p. 110.)

The People had the burden of proving that defendant's manifestation of consent was the product of his free will and was not a mere submission to an express or implied assertion of authority. (*People* v. *Johnson* (1968) 68 Cal.2d 629, 632 [68 Cal.Rptr. 441, 440 P.2d 921].) We believe that the officer's testimony on the issue of consent met that burden

and that substantial evidence supports the trial court's conclusion that the defendant voluntarily consented to the search of his vehicle.

## II

■ Appellant next contends that no exigent circumstance justified the search of the vehicle at the impound lot nor the opening of closed containers found within the trunk of that vehicle. We note first that if a search of a vehicle at the scene of an arrest is valid, its later search when impounded infringes no constitutional prohibition and constitutes no greater invasion of defendant's rights. (*People* v. *Hill* (1974) 12 Cal.3d 731, 751 [117 Cal.Rptr. 393, 528 P.2d 1].) Appellant relies on *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476], and *People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514], for the proposition that either at the scene of the arrest or when impounded, a search of closed containers within a vehicle is unlawful in the absence of a warrant. Appellant reads too broadly the holding of the cited cases. The automobile exception to the warrant requirement for search will not justify the opening of closed packages seized from within a car. Absent some additional exigency, the items must be taken into custody and a warrant obtained before they may be opened.

In this case the officers did not rely on the automobile exception or upon any other stated exigency to justify the search and seizure. The officers relied upon defendant's consent. A voluntary consent to search creates a separate and independent exception to the warrant requirement and justifies a warrantless search of all areas covered by the consent over which defendant had authority. (See *People* v. *Cruz* (1964) 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889].)

■ Appellant next argues that even if *Chadwick* and *Minjares* do not apply to invalidate the search in this case, his consent to search the car did not authorize a search of the trunk nor of any closed items within the trunk. The trial court expressly found to the contrary. The court stated: "...I think the ordinary person understands to search the car means everything about the car. I think almost anyone would understand that means looking under it, through the seats, and so forth. I think you don't have to be a lawyer to understand that, and when the permission is given to search, it doesn't mean—if you search, yes, you go in there, that you are going to find boxes but you can't look in the boxes. [¶]...So if permission is to mean anything, it has to mean to us

the reasonable understanding of what search means and that is to look for things that the officer suspects may be evidence of a crime."

Our research has disclosed no cases holding that a consent to search a vehicle does not extend to the trunk of that vehicle nor to concealed items therein. In *People* v. *Martinez* (1968) 259 Cal.App.2d Supp. 943, 945 [65 Cal.Rptr. 920], the court found that consent to search a car did not extend to a search of the trunk. But in that case, the defendant had expressly limited the extent of the consent given. While it is true that a search authorized by consent may be invalidated if conducted beyond the scope of that consent, we do not believe that the consent to search the car given by defendant in this case was as limited as he now contends.

The cases finding that a search exceeded the scope of consent given have involved fact situations substantially different from the case at bar. (*People* v. *Superior Court* (*Arketa*) (1970) 10 Cal.App.3d 122 [89 Cal.Rptr. 316] (consent to search home for persons did not authorize the search of closets); *People* v. *Hodson* (1964) 225 Cal.App.2d 554 [37 Cal.Rptr. 575] (similar to *Arketa*), *People* v. *Cruz, supra,* 61 Cal.2d 861, *People* v. *Anderson* (1975) 50 Cal.App.3d 325 [126 Cal.Rptr. 68], *Beach* v. *Superior Court* (1970) 11 Cal.App.3d 1032 [90 Cal.Rptr. 200], *People* v. *Stage* (1970) 7 Cal.App.3d 681 [86 Cal.Rptr. 701], *People* v. *Fry* (1969) 271 Cal.App.2d 350 [76 Cal.Rptr. 718], and *People* v. *Murillo* (1966) 241 Cal.App.2d 173 [50 Cal.Rptr. 290] (consent to search did not authorize the inspection of property belonging to others); *People* v. *Harwood* (1977) 74 Cal.App.3d 460 [141 Cal.Rptr. 519] (consent to search did not authorize the interception of incoming telephone calls); *In re Johnny V.* (1980) 85 Cal.App.3d 120 [149 Cal.Rptr. 180], and *People* v. *Superior Court* (*Kenner*) (1977) 73 Cal. App.3d 65 [139 Cal.Rptr. 343] (consent to enter to talk to defendant is not consent to arrest).)

On the other hand, in *People* v. *Superior Court* (*Casebeer*) (1969) 71 Cal.2d 265 [78 Cal.Rptr. 210, 455 P.2d 146], the Supreme Court rejected defendant's argument that the consent to search his car did not extend to a matchbox found therein, stating at footnote 6, page 270: "It can be reasonably inferred that a matchbox under the seat of the car was under the owner's control."

We believe that the voluntary consent to search his automobile given by defendant in this case authorized a search of all compartments in the automobile and of any containers found within those compartments. Had the defendant wished to limit the scope of the search, he should

have done so. We believe that the defendant intended, and the officer understood, that the consent encompassed the vehicle in its entirety including its contents. To hold otherwise would require an extended and potentially confusing colloquy between the officer and the subject in an effort to isolate the precise areas of the automobile to which the consent to search extended. We do not believe that the Fourth Amendment requires anything more than the defendant's voluntary consent to the search of property under his control.

Authorization to search an automobile must be deemed to include the automobile in its entirety, unless the defendant expressly states otherwise. We find that the consent given in this case was sufficiently broad to cover all areas searched and items seized by the officers.

## III

Appellant next contends that the consent to search his storage locker was obtained in violation of his right to counsel, in that the arresting officers knew that he was represented by an attorney at the time the consent was requested. We note that this contention could have equal application to the automobile search, and we address the issue with respect to both searches.

Defendant was arrested on January 26, 1979. On the date of his arrest, he was booked, posted bail, and was released from custody. Four days later, on January 30, 1979, a storage locker belonging to defendant was searched. The record reflects that, at the time of that search, and at the time of the search of defendant's automobile on the date of his arrest, the searching officers knew that defendant had been represented in the past by an attorney named Donald Gallagher. Gallagher testified at the hearing on the motion to suppress evidence that on or about January 15, Officer Reilman contacted him, notifying him that they had a warrant for the arrest of defendant. Gallagher had several conversations with Officer Reilman and others concerning his efforts to locate defendant to recommend that he surrender himself. The first of those conversations occurred at Gallagher's home when Officer Reilman sought to learn the whereabouts of the defendant. Shortly before defendant's arrest, Gallagher informed the police that he had spoken to defendant and had advised him to surrender.

Officer Reilman testified that, at the time of the searches, he knew that Gallagher was a friend of defendant's and was an attorney who

had represented defendant in the past. Detective Lencke testified that, when he requested defendant's consent to search the storage locker, he knew who Don Gallagher was and knew that he had been defendant's attorney. At the time of neither search had formal charges been filed, nor had defendant been arraigned. The officers denied that any arrangements had been made to surrender the defendant.

The search of the storage locker occurred under the following circumstances: On January 30, 1979, Reilman and Lencke went to a storage facility wherein they had reason to believe defendant was renting a storage locker, to view it for purposes of describing it in an affidavit for search warrant. After having observed the facility, Lencke stayed behind at defendant's locker; Reilman went to get a warrant. While Lencke was waiting, defendant and a companion, Mr. Hale, arrived at the locker. The officer told him the premises were being secured awaiting the search warrant and that nothing was to be removed. Lencke testified that defendant responded that no search warrant would be necessary, "that I had his permission to go ahead and check the storage room." Defendant and Mr. Hale, accompanied by Detective Lencke, then entered the storage locker. Defendant looked through numerous files, trying to locate some records belonging to Mr. Hale. That search by defendant took approximately one hour, and was observed by Detective Lencke. Defendant and Mr. Hale then left the area, asking the officer to be careful in his search and to lock the premises after.

Lencke then closed the door and went to the storage office to call the station and to notify Reilman that no search warrant was required. Reilman then returned to the storage facility and the search was conducted by Lencke and Reilman.

Appellant cites *Tidwell* v. *Superior Court* (1971) 17 Cal.App.3d 780 [95 Cal.Rptr. 213], in support of the proposition that once counsel is appointed, the police may not initiate interrogation nor elicit consent to search from a defendant in the absence of his attorney. A significant distinction between *Tidwell* and the instant case is that there defendant had been arraigned and counsel appointed to represent him in those proceedings. A felony complaint was not filed in the instant case until February 8, 1979, and appellant was arraigned on March 27, 1979.

Appellant points out that, at the time of the locker search, he had been arrested, booked and released on bail. Further, Attorney

Gallagher had appeared at the police station on the day of his arrest and arranged for his bail. He argues, therefore, that adversary proceedings had been initiated against him, and that any communication with him in the absence of counsel was prohibited. We disagree. The booking procedure is not tantamount to institution of adversary judicial proceedings.[1] The Constitution requires that an accused be given the aid of counsel at or after the time that judicial proceedings have been initiated against him, "... whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." (*Brewer* v. *Williams* (1977) 430 U.S. 387, 398 [51 L.Ed.2d 424, 436, 97 S.Ct. 1232, 1239].) The right to the presence of counsel does not attach to prearraignment, investigatory interrogations or searches.

In *People* v. *Jentry* (1977) 69 Cal.App.3d 615 [138 Cal.Rptr. 250], defendant was arrested and booked and, during the booking process, made several telephone calls in an effort to obtain an attorney. Some hours later, he approached the police officers and volunteered to waive his previously asserted right to counsel, following which a confession was received. (*Id.*, at pp. 621-624.) The court noted: "Nor was the statement of November 21 taken in derogation of appellant's Sixth Amendment right to counsel. The statement was volunteered by appellant and was given in the preinformation stage of the proceedings. In *People* v. *Duck Wong* (1976) 18 Cal.3d 178, 185-186...the Supreme Court held that *Massiah* v. *United States* (1964) 377 U.S. 201... which stands for the proposition that a statement surreptitiously elicited by police after indictment and after the defendant is represented by counsel without the presence of counsel or the waiver thereof is inadmissible, does not apply to the investigatory phase of criminal proceedings, that is, to interrogation before charges are filed." (*Id.*, at p. 624.) (To the same effect see *People* v. *Booker* (1977) 69 Cal.App.3d 654, 663-665 [138 Cal.Rptr. 347].)

And in *People* v. *Strawder* (1973) 34 Cal.App.3d 370 [108 Cal.Rptr. 901] (cited with approval in *People* v. *James, supra*, 19 Cal.3d at

---

[1] "The booking process is usually a predominantly clerical procedure, performed immediately or soon after the suspect has been delivered to the precinct or district station. An arrest card is prepared on the suspect and is later used for posting on his permanent police record. Depending on the severity of the offense, the suspect may be fingerprinted, photographed, and requested to supply a handwriting sample. An entry is made on the police 'blotter' or 'arrest book', indicating the name of the person arrested, the date and time of the arrest, the offense involved, and whether the suspect is to be further investigated...." (LaFave, Arrest, The Decision to Take a Suspect Into Custody (1965) pp. 379-380.)

p. 115), the court held that a search conducted prior to formal charge, preliminary hearing, indictment, information or arraignment is not a critical stage of the prosecution at which the accused is entitled to the presence of counsel.

Furthermore, the granting of consent to search is not testimonial in nature.

"We begin by briefly disposing of defendant's contention that his consent was presumptively tainted because Officer Ferraro had not given him a *Miranda* warning. On that point the leading case is *People* v. *Thomas* (1970) 12 Cal.App.3d 1102, 1108-1112 [91 Cal.Rptr. 867], which held that advice as to *Miranda* rights is not a prerequisite to a voluntary consent to search. The rationale of *Thomas* was that such consent is 'neither testimonial, nor communicative in the Fifth Amendment sense. If appearing in a lineup and speaking words used by a robber is not a "disclosure of any knowledge [the accused] might have" (*United States* v. *Wade*, 388 U.S. 218, 222 [18 L.Ed.2d 1149, 1158, 87 S.Ct. 1926]), neither is a consent to search. The fact that the search leads to incriminating evidence does not make the consent testimonial, any more than the victim's identification at the lineup gives such a quality to the words spoken by the suspect.' (*Id.*, at p. 1110.) In short, 'The request for a consent to search is designed to elicit physical and not testimonial evidence.' (*People* v. *Strawder* (1973) 34 Cal.App.3d 370, 379 [108 Cal.Rptr. 901].)

"...We now invoke the *Thomas* rationale for its original conclusion: for the reasons stated in that decision, we hold that defendant's consent was not rendered involuntary as a matter of law because Officer Ferraro did not advise him of his *Miranda* rights before asking permission to search. We find no such obligation under either the California or federal Constitutions, and we reject as unpersuasive defendant's proposed distinction in this connection between custodial and noncustodial requests. Inasmuch as the request to search is not intended to produce testimonial evidence, the setting in which it is made is irrelevant to this issue." (Fns. omitted.) (*People* v. *James, supra*, 19 Cal.3d at pp. 114-115.)

The officer's request of defendant that he consent to the search of his storage locker, and the earlier request that defendant consent to the search of his car, occurred prior to the filing of formal charges against defendant. The fact, therefore, that the officers knew that defendant

had been represented by a particular attorney in the past did not require that that attorney be present or consulted at the time consent was sought.

The record supports the trial court's conclusion that defendant voluntarily consented to the search of his automobile and storage locker and that the requests for such consent violated no constitutional provisions.

The judgment is affirmed.

Kingsley, Acting P. J., and Laidig, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 25, 1981. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.