[Crim. No. 41042. Second Dist., Div. One. Oct. 21, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH WILLIAM CHALLONER, Defendant and Appellant.

**COUNSEL**

Steven Zwick for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Carol Wendelin Pollack, Robert R. Anderson and Christine C. Franklin, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DALSIMER, J.**—Kenneth William Challoner appeals from the judgment of conviction entered following his guilty plea before Judge Miller to possession of cocaine for sale (Health & Saf. Code, § 11351). Appellant

challenges the trial court's denial of his motion to suppress made before Judge McVittie, contending that the warrantless search of his residence was unreasonable under the Fourth Amendment to the United States Constitution and article I, section 13, of the California Constitution because the consent to search was involuntary.

We view the facts in the light most favorable to the trial court's ruling. (*People* v. *Superior Court* (*Keithley*) (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].) On May 20, 1980, at approximately 5 p.m., four sheriff's officers arrived by van at defendant's house after being informed that a narcotics sale was occurring there. With guns drawn, they quickly got out of the van. Soon thereafter, officers in three other police vehicles arrived at the scene. Defendant ran toward the house, but stopped abruptly when ordered to do so. Defendant and several other persons were placed under arrest.

Sergeant Barrier rapidly went to the front porch. The front door was open, but the screen door remained closed. Sergeant Barrier saw two women standing approximately fifteen feet away from the door. Without knocking on the door, Sergeant Barrier proceeded to address the women. Still displaying his gun, Barrier said in a loud, clear voice that he was a sheriff's officer and was conducting a narcotics investigation. He asked the women if either of them lived there. Vivian Eiseman, defendant's common law wife, said that she lived there. Sergeant Barrier told her that he had made some narcotics arrests outside and said that he wanted to enter the house to search for other suspects and for narcotics. When Sergeant Barrier made this statement, his gun was drawn, pointed at the ground, and Officer Flynn, who was approaching the house, was close behind him. The two women remained approximately fifteen feet from the door. Ms. Eiseman answered, "Sure," and Sergeant Barrier searched each room for other suspects. In one of the bedrooms, he found cocaine. The officers did not have a search warrant. When the cocaine was found, Sergeant Barrier requested permission to perform a more thorough search. Ms. Eiseman then said, "Sure, search it all, he's been selling cocaine and marijuana and screwing up for a long time, go ahead." When a further search was conducted, additional drugs were found.

■ When the government relies on consent to justify a warrantless search, it must establish by substantial evidence that the consent was voluntarily given. (*People* v. *McKelvy* (1972) 23 Cal.App.3d 1027, 1033 [100 Cal.Rptr. 661].) Mere acquiescence to a claim of authority will not suffice. (*Ibid.*) "The People must show that consent was 'uncontaminated by any duress or coercion, actual or implied.' [Citations.]" (*Ibid.*)

In *McKelvy*, a police spotlight was placed on defendant at 3 a.m. and four officers, each carrying a shotgun or carbine, moved "into position" around defendant. (*Id.*, at p. 1032.) Defendant complied with an officer's request to hand over an item he had placed in his pocket. Observing that "where the undisputed facts clearly reveal that an apparent consent was not freely and voluntarily given but was in submission to an assertion of authority, a reviewing court is not bound by [the trial court's] finding of consent . . . [citations]," (*id.*, at pp. 1033-1034), the court held that there was insufficient evidence to support the trial court's finding of consent. (*Id.*, at p. 1034.) The *McKelvy* court stated, "[N]o matter how politely the officer may have phrased his request for the object, it is apparent that defendant's compliance was under compulsion of a direct command by the officer. [Citations.] The evidence established 'no more than mere acquiescence to a claim of lawful authority.'" (*Ibid.*)

■ Consent to search given in response to a request by an armed officer whose gun is drawn is suspect. Such consent may well be obtained by coercion and hence not voluntary. A person so confronted might reasonably believe that he was not free to refuse the permission sought. Thus, the court in *People* v. *James* (1977) 19 Cal.3d 99 [137 Cal.Rptr. 447, 561 P.2d 1135], in upholding the trial court's determination that defendant's consent to search was voluntary, pointed out that although the officers were armed, the consent was not secured at gunpoint. (*Id.*, at pp. 110-113.) It is noteworthy that *James* cites *McKelvy* with approval. In *People* v. *Schomer* (1971) 17 Cal.App.3d 427 [95 Cal.Rptr. 125], in explaining why substantial evidence supported the trial court's finding that the consent to search was voluntary even though the officers were armed, we emphasized that at no point had the deputies unholstered their guns. (*Id.*, at p. 433.) Again, in *People* v. *Harrington* (1970) 2 Cal.3d 991, 997 [88 Cal.Rptr. 161, 471 P.2d 961], the court, in upholding the trial court's finding that consent to search was voluntary, carefully pointed out that although the officer was armed, there was nothing to indicate that he ever unholstered his gun or engaged in other coercive or threatening action.

■ In the case at bar, it is clear that under the totality of the circumstances Ms. Eiseman's consent was not given voluntarily. Evidence of the drawn gun is not itself sufficient to establish that her consent was the product of coercion, but there was insufficient evidence to establish that Ms. Eiseman's consent was voluntary. The number of officers present, the arrest of her common law husband and the others at gunpoint just moments prior to the request for permission to search the house, the failure of Sergeant Barrier to knock before requesting permission to search, and Ms. Eiseman's distance from the door at the time that the request to search was made, together with the display of the weapon at the time Sergeant Barrier requested permission to search, establish as a matter of law that the consent

was not "'uncontaminated by . . . coercion.'" (*People* v. *McKelvy, supra,* 23 Cal.App.3d 1027, 1033.) The consent of Ms. Eiseman, having been obtained through coercion, was not voluntary.[1] Since the consent of Ms. Eiseman was not voluntary, the conviction must be reversed.

The judgment is reversed.

Spencer, P. J., concurred.

**HANSON (Thaxton), J.**—I respectfully dissent. I would affirm the judgment (order granting probation).[1]

As noted in the majority opinion: "A proceeding under section 1538.5 to suppress evidence is a full hearing on the issues before the superior court sitting as finder of fact. (*People* v. *Superior Court (Peck)* 10 Cal.3d 645 649 [111 Cal.Rptr. 565, 517 P.2d 829]; *People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence. (*People* v. *Gale* (1973) 9 Cal.3d 788, 792 [108 Cal.Rptr. 852, 511 P.2d 1204]; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)" (*People* v. *Superior Court*

---

[1] The fact that once cocaine was found, Ms. Eiseman expressed anger or frustration concerning appellant's involvement with drugs and agreed that the officers could continue their search does not in any way validate the original consent.

[1] This matter includes two consolidated cases.

Case number A 525884 (a two-count information), filed on October 14, 1980, accused the defendant on May 20, 1980, of having in his possession for sale a controlled substance (cocaine) in violation of Health and Safety Code section 11351 (count I), and of having in his possession for purpose of sale marijuana in violation of Health and Safety Code section 11359 (count II).

Case number A 526789, a single-count information, filed on March 10, 1981, accused the defendant on January 17, 1981, of being in possession of a controlled substance (cocaine) in violation of Health and Safety Code section 11350 (consolidated with case number A 525884 as count III).

Following denial of defendant's motion to suppress evidence he pled guilty to count I (possession of cocaine for sale) and counts II and III were dismissed in the interest of justice.

At time of sentencing on June 29, 1981, imposition of sentence was suspended and defendant was placed on formal probation for three years on a condition, amongst others, that defendant spend the first six months in county jail. However, the court granted a six months stay of the local jail time pending a supplementary probation report and indicated there would be another six months stay if there were no violations of probation. The record on appeal does not reflect the current status of the case.

(*Keithley*) (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]; see also, *People* v. *James* (1977) 19 Cal.3d 99, 107 [137 Cal.Rptr. 447, 561 P.2d 1135].)

At the expense of being somewhat repetitious, the evidence presented at the hearing on defendant Kenneth William Challoner's (hereinafter defendant and/or Challoner) motion to suppress evidence pursuant to Penal Code section 1538.5 (hereinafter section 1538.5) was substantially as follows:

Sometime before 4 p.m. on May 20, 1980, four police officers with their guns drawn arrested defendant Challoner in the front of his residence, the defendant having just completed a drug transaction with a police informer. Three police cars containing additional officers arrived soon thereafter.

Officer Robert Barrier proceeded to the front of the residence. Through the closed screen door he saw two women standing inside approximately fifteen feet away. He identified himself as a police officer conducting a narcotics investigation and asked who resided there. A young woman, Vivian Eiseman, stated that she resided there. When asked, she gave the officer permission to enter the residence to search for narcotics or additional suspects. At that time Officer Barrier had his gun drawn but *pointed toward the ground.* One other officer was close enough to hear the conversation which he described as *"very amiable."*

Inside a bedroom Eiseman shared with the defendant, Officer Barrier discovered "narcotics, marijuana and cocaine" on a shelf in an open closet. When asked if the officers could thoroughly search the room, Eiseman stated, *"sure, search it all, he's been selling cocaine and marijuana and screwing up for a long time, go ahead."* More narcotics were discovered in the room. Officer Barrier testified that Eiseman *"appeared to be very calm, appeared to be a little angry at the defendant."* She accompanied the officers through the residence and assisted them in the search.

Vivian Eiseman testified that the police entered the residence without her permission, pointed their guns at her and a girl friend and searched the house without asking for her consent. Frances Eiseman, Vivian's mother, testified that although the police searched defendant's bedroom and discovered marijuana, she gave them consent to search the house.

Defendant Challoner contends that Vivian Eiseman's consent to enter and search the residence was invalid as a matter of law because it was a submission to the authority of officers whose guns were drawn. I disagree.

I note that while this matter was pending decision the Proposition 8 initiative was passed on June 8, 1982 (eff. June 9, 1982), and that the Supreme Court held the initiative facially constitutional in *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236 [186 Cal.Rptr. 30, 651 P.2d 274]. In *Wilson* v. *Superior Court*\* (Cal.App.), this court, in addition also to concluding that Proposition 8 was constitutional, held that the "Truth-in-Evidence" provision of the initiative abrogates section 1538.5 and California decisional law imposing higher standards for searches and seizures than under federal law and that the provision has retroactive effect.

Accordingly I note, without deciding, that a person in the defendant's shoes may no longer have standing to contest Fourth Amendment issues which did not involve his own expectation of privacy. However, I need not address the issue of vicarious standing in the present case since the People did not raise it in the trial court and pursuant to *Steagald* v. *United States* (1981) 451 U.S. 204 [68 L.Ed.2d 38, 101 S.Ct. 1642], it was not and cannot be raised for the first time on appeal.

The People have the "burden of proving [by a preponderance of the evidence] that the defendant's manifestation of consent was the product of his free will and not a mere submission to an express or implied assertion of authority. [Citations.] The voluntariness of the consent is in every case 'a question of fact to be determined in light of the circumstances.' [Citations.]" (*Id.,* at p. 106.] (*People* v. *James, supra,* 19 Cal.3d 99, 106, 107.)

Here the court expressly credited the testimony of the police officers. The fact that Officer Barrier's gun was drawn and pointed at the ground does not automatically establish as a matter of law that Eiseman's consent was improperly obtained. (*People* v. *Williams* (1980) 114 Cal.App.3d 67, 70-72 [170 Cal.Rptr. 433].) Officer Barrier stood at Eiseman's front door with his gun out of the holster but pointed at the ground. Although other officers were in the yard, only one officer accompanied him to the door. Officer Barrier did not open the door or cross the threshold until he spoke with Eiseman and received permission to enter. Eiseman was calm throughout, her conversation with the officer was "amiable" and she apparently permitted the search because she was angry at the defendant. Under the totality of these facts, I cannot say as a matter of law that the consent was a mere submission to authority.[2]

---

\*Reporter's Note: Hearing granted, for Supreme Court opinion see 34 Cal.3d 777 [195 Cal.Rptr. 671, 690 P.2d 325].

[2]Indeed the trial court in the case at bench expressly found that the consent to the search was voluntary under the "beyond-the-reasonable-doubt" standard apparently in an effort to insure that a reviewing court be aware of the strength of its factual finding.

The May 22, 1981, minute order entitled "MEMORANDUM TO CLARIFY THE RECORD"

*People* v. *McKelvy* (1972) 23 Cal.App.3d 1027, 1034 [100 Cal.Rptr. 661], cited by defendant, is factually distinguishable. There the defendant had been detained at 3 a.m. in an area where a curfew had been imposed because of a race riot. He had been walking over the front lawns of residences and was observed to secrete an object in his pocket. Four officers, each carrying either a shotgun or carbine, "moved 'into position' to cover the police unit and each other." (*Id.*, at p. 1032.) Defendant was surrounded and standing in a police spotlight when one of the officers asked the defendant to "hand over" an object he had placed in his pocket, the defendant complied. The court concluded: " . . . In these circumstances no matter how politely the officer may have phrased his request for the object, it is apparent that defendant's compliance was in fact under compulsion of a direct command by the officer. [Citations.] The evidence established 'no more than acquiescence to a claim of authority.' . . ." (*Id.*, at p. 1034.)

Such, of course, is not the situation in the case at bench. One officer approached Vivian Eiseman in her home in the early evening hours. His gun was out of its holster but pointed to the ground. Vivian Eiseman was calm and helpful. Under the totality-of-circumstances, I cannot say as a matter of law, based on an independent review of the record, there was insufficient evidence to support the trial court's findings or that the consent was involuntarily given.

A petition for a rehearing was denied November 17, 1982. Hanson (Thaxton), J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied December 15, 1982.

---

provides:

"The defendant having moved for dismissal pursuant to Section 1538.5 of the Penal Code, testimony having been presented, the matter having been argued and thereafter having been denied on May 18, 1981, the Court desires by this Memorandum to clarify the record in the event of a subsequent appeal.

"Although the people argued that their burden of proof as to the legality of the warrantless search was met with a 'preponderance of the evidence,' in weighing the evidence presented by the parties the Court was convinced 'beyond a reasonable doubt' that consent to the search in question was freely and voluntarily given and that the stricter evidentiary requirements set forth in *People* v. *Jimenez*, 21 Cal.3d 595 (1978) were met.

"Either party may request a further hearing on this matter by contacting the Clerk in Department EAL."