[No. C001799. Third Dist. Mar. 28, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE ISABEL HERNANDEZ et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, all portions of this opinion shall be published except parts I, III, and IV of the Discussion.

**COUNSEL**

James M. Fahey, under appointment by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Joel Carey and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—In this case police discovered evidence in one of several bedrooms in a house where each bedroom was occupied by a different person. The issue before us is whether a person who does not live in the bedroom in which the evidence was discovered, and who has never been given permission to enter the room, has a legitimate expectation of privacy in that room sufficient to challenge the introduction of the evidence on the ground it was seized in violation of the Fourth Amendment to the United States Constitution. We conclude such a person has no privacy interest in a room from which he has been excluded and consequently may not challenge the introduction of evidence seized in that room.

Defendants Jose Isabel Hernandez (also known as Juan Garcia), Gabriel Rodriguez and Jose Antonio Paz appeal judgments of conviction arising out of their participation in the sale of heroin. Hernandez was convicted of sale of heroin (Health & Saf. Code, § 11352); Rodriguez was convicted of conspiracy to sell heroin (Pen. Code, § 182) and possession of heroin with intent to sell (Health & Saf. Code, § 11351) in an amount exceeding 14.25 grams (Pen. Code, § 1203.07, subd. (a)(1)) while being armed with a firearm. (Pen. Code, § 12022, subd. (a).) Paz pled guilty to conspiracy and possession for sale counts and admitted allegations of being armed and possessing more than 14.25 grams.

Defendants contend the prosecutor committed misconduct. They also contend their motion to suppress evidence (Pen. Code, § 1538.5) was erroneously denied because, they assert, the police unlawfully detained defendants Rodriguez and Paz while they were riding in an automobile. In an unpublished portion of this opinion, we reject these contentions.

In this published portion, we consider defendants Rodriguez's and Paz's contentions that their motion to suppress was erroneously denied with respect to heroin discovered in a bedroom in a house where they were living.[1]

### DISCUSSION

#### I*

. . . . . . . . . . . . . . . . . . . .

---

[1] Defendant Hernandez was not convicted of the charges arising out of the evidence seized in the house. Hernandez was convicted of selling heroin in the parking lot of a market. Hernandez concedes any error in admitting the evidence in the house is harmless as to him.

* See footnote *ante,* page 1182.

## II

*The trial court properly refused to suppress heroin discovered in the northeast bedroom at 149 Cathcart Street.*

■ "An appellate court's review of a motion to suppress evidence is . . . governed by well-settled principles. The trial court's factual findings relating to the challenged search or seizure, 'whether express or implied, must be upheld if they are supported by substantial evidence.' [Citation.] ' "The trial court also has the duty to determine whether, on the facts found, the search was unreasonable within the meaning of the Constitution." [Citation.] Because "that issue is a question of law," the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon. Rather, . . . in such review it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." [Citation.] On that issue, in short, the appellate court exercises its independent judgment.' [Citations.]" (*People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436].)

*A. Facts relating to the search of the residence at 149 Cathcart Street.*

Defendants' motion to suppress in superior court (Pen. Code, § 1538.5) was submitted on evidence taken at the preliminary hearing, supplemented by live testimony. Viewed in the light most favorable to the ruling of the lower court (*People* v. *James* (1977) 19 Cal.3d 99, 107 [137 Cal.Rptr. 447, 561 P.2d 1135]), the evidence showed the following: Based upon information received from outside sources and confirmed by their own surveillance, Sacramento police suspected the residents of a house at 149 Cathcart Street were involved in narcotics activity and were using their cars to facilitate transactions. Acting on that suspicion, on June 25, 1986, officers stopped a car in which defendants Rodriguez and Paz were riding. After discovering that the occupants of the car were illegal aliens, the officers transported defendants to the police station for booking and then to jail.

Detective Thomas Backer spoke with Rodriguez at the jail shortly after he was arrested. Rodriguez said he was an illegal alien and he lived at 149 Cathcart Street. Backer asked Rodriguez for permission to search the house for heroin. Rodriguez said he could. Backer brought Schiele into the room and again requested permission to search for heroin. Rodriguez, who indicated he was in control of the house, said "yes, let's go."

The officers took Rodriguez with them back to 149 Cathcart Street. On the way, Rodriguez told Detective Backer that other people lived in the

house. Backer learned that Rodriguez and his wife occupied one bedroom and Paz another.

When they entered the house, Officer Gary Bettenhausen assisted in a cursory preliminary search of the house to ensure the officers' safety. Officer Bettenhausen went into the north*east* bedroom where he found and seized two guns. Before removing the guns, Bettenhausen spotted a piano bench he thought he could use as a platform for packaging seized evidence and writing notes about the evidence. He had no clue that the piano bench was associated with anything relating to narcotics, nor did he suspect it had an inner compartment. In fact, the piano bench did have an inner compartment that was revealed when Bettenhausen grasped the lid to pick it up. Contained within were a scale, a dinner plate, and individually packaged pieces of what he believed was tar heroin, which he confiscated.

After the discovery of heroin in the piano bench, Rodriguez indicated that the bedroom was used by Paz. Officer Backer telephoned Officer Santiago Garcia at the police station and asked him to get consent to search the room from Paz. When asked by Officer Garcia (in Spanish) whether a search of his bedroom was permissible, Paz said, "Yes, go ahead." Garcia relayed this information to Backer. A short time later, Backer called Garcia again to say that Rodriguez had indicated Paz actually occupied two bedrooms. Garcia spoke to Paz once more. Paz described some personal property in his bedroom; the property was located in the north*west* bedroom.

B. *Rodriguez validly consented to a search of the house.*

Defendants argue that Rodriguez's consent to search the house at 149 Cathcart Street was involuntarily given because of his lack of education and his unawareness of his constitutional rights, and because he was not read his *Miranda* rights[3] nor told he could refuse his consent to the search. In addition, defendants argue Rodriguez was in a vulnerable state of mind because he "found himself in a foreign jail in the custody of foreign police." If this argument is correct, the police had no authority to enter the house and any evidence seized from within should have been excluded.

The prosecution has the burden to establish that the consent upon which a search is based was voluntarily given and was unaffected by duress or coercion. (*People* v. *James, supra,* 19 Cal.3d at p. 106.) The superior court's findings, either express or implied, will be upheld on appeal if they are supported by substantial evidence. (*Id.,* at p. 107.) On appeal all

---

[3] See *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

presumptions favor the proper exercise of the trial court's power to judge the credibility of witnesses, resolve conflicts, weigh evidence, and draw inferences. (*People* v. *Ratliff* (1986) 41 Cal.3d 675, 686 [224 Cal.Rptr. 705, 715 P.2d 665].)

In this case, the prosecution presented facts to show that Rodriguez, who spoke English and seemed to understand the officers' questions, unhesitatingly agreed to the request to permit a search of the residence. Although Rodriguez was in custody, "the fact of custody alone has never been enough in itself to demonstrate a coerced . . . consent to search." (*United States* v. *Watson* (1976) 423 U.S. 411, 424 [46 L.Ed.2d 598, 609, 96 S.Ct. 820].) The fact defendant is in custody must be weighed with all other relevant facts. (*People* v. *Ratliff, supra,* 41 Cal.3d at p. 686-687; *People* v. *James, supra,* 19 Cal.3d at pp. 109-110.) There was no evidence to show the officers displayed their weapons or other signs of force (cf. *People* v. *Challoner* (1982) 136 Cal.App.3d 779, 782 [186 Cal.Rptr. 458]), or that they made any improper inducements to obtain consent. The officers "did not claim the right to search without permission, nor act as if [they] intended to enter regardless of defendant's answer." (*James, supra,* at p. 113.)

Nor was Rodriguez's consent invalid because he had received no *Miranda* warnings. Such warnings are not required to validate a consent to search. (*Id.,* at pp. 114-115; followed in *People* v. *Ratliff, supra,* 41 Cal.3d at p. 686.) Nor were the officers obligated to tell Rodriguez he could refuse to consent to the search. (*Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 231-234 [36 L.Ed.2d 854, 865-867, 93 S.Ct. 2041].)

Substantial evidence supports the trial court's implied finding that Rodriguez lawfully consented to a search of the house. (*Ratliff, supra,* 41 Cal.3d at p. 687.)

C. *Defendants may not challenge the introduction into evidence of the heroin.*

We now turn to the evidence discovered in the piano bench located in the northeast bedroom. Defendants contend the heroin in the piano bench, which was the only contraband found in the house, was unlawfully seized. (See *Arizona* v. *Hicks* (1987) 480 U.S. 321 [94 L.Ed.2d 347, 107 S.Ct. 1149].)

Before reaching the question whether the officer's movement of the piano bench was a "search" or whether there was a "seizure" in the constitutional sense, we must determine whether the challenged action by the officer "has infringed an interest of the defendant which the Fourth Amendment was designed to protect." (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 140 [58

L.Ed.2d 387, 399, 99 S.Ct. 421]; Cal. Const., art. I, § 28, subd. (d); *In re Lance W.* (1985) 37 Cal.3d 873, 882-883 [210 Cal.Rptr. 631, 694 P.2d 744].)[4]

■    An illegal search or seizure violates the federal constitutional rights only of those who have a legitimate expectation of privacy in the invaded place or seized thing. (*United States* v. *Salvucci* (1980) 448 U.S. 83, 91-92 [65 L.Ed.2d 619, 628, 100 S.Ct. 2547].) The legitimate expectation of privacy must exist in the *particular area searched or thing seized* in order to bring a Fourth Amendment challenge. (*Rakas, supra,* at pp. 148-149 [58 L.Ed.2d at p. 404]; *United States* v. *Rackley* (11th Cir. 1984) 742 F.2d 1266, 1270; *United States* v. *Meyer* (5th Cir. 1981) 656 F.2d 979, 981, cert. den. (1984) 465 U.S. 1065 [79 L.Ed.2d 739, 104 S.Ct. 1413].) A defendant bears the burden to show he had such an expectation. (*Rawlings* v. *Kentucky* (1980) 448 U.S. 98, 104 [65 L.Ed.2d 633, 641, 100 S.Ct. 2556]; *People* v. *Root* (1985) 172 Cal.App.3d 774, 778 [218 Cal.Rptr. 182].) Factors to consider in the determination include " 'whether the defendant has a [property or] possessory interest in the thing seized or the place searched; whether he has the right to exclude others from that place; whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.' " (*United States* v. *Briones-Garza* (5th Cir. 1982) 680 F.2d 417, 420, cert. den. (1982) 459 U.S. 916 [74 L.Ed.2d 181, 103 S.Ct. 229], quoting *United States* v. *Haydel* (5th Cir. 1981) 649 F.2d 1152, 1155, cert. den. (1982) 455 U.S. 1022 [72 L.Ed.2d 140, 102 S.Ct. 1721].)

At the hearing on the motion to suppress, Paz testified he had lived in the house for three days. He neither paid rent nor shared in household expenses. He received no mail there and had never told anyone his address was 149 Cathcart Street. He said the north*east* bedroom (where the piano bench containing heroin was discovered) was not his; he occupied the north*west* bedroom.[5] He had never been inside the northeast bedroom; he had no property there. When asked whether he had any idea what was in that room, he said "No because the room was closed." He had never received permission to enter that bedroom.

In *People* v. *Hamilton* (1985) 168 Cal.App.3d 1058 [214 Cal.Rptr. 596], the court held that a guest or invitee, who was actually occupying a bed-

---

[4] Although traditionally framed as a question of "standing," ". . . the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." (*Rakas* v. *Illinois, supra,* 439 U.S. at p. 139 [58 L.Ed.2d at p. 398]; *In re Lance W., supra,* 37 Cal.3d at pp. 882-883.)

[5] This was consistent with the bedroom Paz said he occupied when Officer Garcia asked for his consent to search.

room in a friend's apartment, had a reasonable expectation of privacy in the room sufficient to invoke the protection of the Fourth Amendment. (Pp. 1065-1066.) However, we have been cited no case, nor are we aware of any, specifically discussing whether people who occupy separate bedrooms in a house have standing to object to a search of a bedroom into which they have not been permitted entry.

■ We conclude Paz had no legitimate expectation of privacy in the northeast bedroom or the piano bench and therefore may not challenge any search or seizure that may have occurred there. He did not stay in that bedroom. Not only was he unable to exclude others from that room, he himself had no permission to enter it. Paz kept no personal property in the room and consequently the piano bench was not his. In *Rakas* v. *Illinois, supra,* 439 U.S. 128, the court opined in dictum that a visitor to another's house would have no expectation of privacy in the basement of the house where he had not been permitted to go. (*Id.,* at p. 142 [58 L.Ed.2d at p. 400].) For purposes of a privacy analysis, we perceive no material distinction between a basement or a bedroom to which a person has no reasonable expectation of entry. Paz therefore had no expectation of privacy, legitimate or otherwise, in a room he neither controlled, used, nor ever entered. (*Ibid.*; cf. *United States* v. *Haydel, supra,* 649 F.2d at pp. 1154-1155 [defendant who had unencumbered access to his parents' home could challenge seizure of gambling records located under his parents' bed].)

■ Similarly, defendant Rodriguez is also precluded from challenging the introduction of the seized heroin. He did not testify in support of the motion to suppress the evidence. Testimony from police at the preliminary hearing indicated Rodriguez said he had been left in control of the entire house and gave police permission to search it. Rodriguez also told Detective Backer the northeast bedroom was occupied by someone else, perhaps by Paz. On this evidence, Rodriguez either had no legitimate expectation of privacy in a room he indicated was not his own, or, if he did, he consented to a search of the entire house including the northeast bedroom and its contents. Either way, the evidence was properly admitted against him.

Since we conclude Paz may not challenge the officer's actions in the northeast bedroom, and Rodriguez consented to any search or seizure in that room, we need not reach the question whether the movement of the piano bench was a "search" or whether the officer "seized" contraband in the constitutional sense. The evidence discovered in the northeast bedroom was properly admitted against defendants Paz and Rodriguez.

III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgments are affirmed.

Sparks, Acting P. J., and Deegan, J.,† concurred.

Appellants' petition for review by the Supreme Court was denied June 22, 1988.

---

\* See footnote *ante*, page 1182.
† Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.