Opinion
 

 VARTABEDIAN, J.
 

 Defendant, Gregory Allen Ybarra, was convicted by jury of transportation of methamphetamine, possession of methamphetaminefor sale, possession of marijuana for sale and possession of psilocybin
 
 *792
 
 mushrooms. The trial court sentenced him to the three-year middle term of imprisonment for the “transportation” conviction; the remaining counts were ordered stayed or imposed concurrently. Defendant appeals, claiming his suppression motion was improperly denied and the trial court improperly restricted his cross-examination of the key prosecution witness. In the published portion of our opinion, we determine that, contrary to the ruling on the motion to suppress, defendant has standing to raise the issue of suppression of the marijuana seized from his locked toolbox. Regarding the claim of improperly restricted cross-examination, the error, if any, was nonprejudicial.
 

 Facts
 

 Kern County Deputy Sheriff Douglas Joslin obtained a search warrant authorizing the search of defendant, his car, and a motel room at 1030 Wible Road. On August 24, 1989, defendant was seen driving his car. He was alone. Deputy Joslin stopped the car. Joslin searched defendant and found a pipe containing marijuana, a pager, and $484 in cash. From the inside of defendant’s car, Joslin seized a soft drink can containing eight bags of methamphetamine, a small bag of marijuana, and a small bag of psilocybin mushrooms.
 

 The search continued to a nearby motel room at 3620 Wible Road, a location not listed in the warrant. Inside the room, officers found a red toolbox, which was locked, and a triple-beam scale. Upon being opened, the toolbox revealed slightly less than three ounces of marijuana contained in three bags.
 

 Joslin, testifying as an expert, concluded the methamphetamine and marijuana were possessed by defendant for purposes of sale.
 

 Defense
 

 The manager of the motel at 3620 Wible Road unlocked the door to the motel room for the officers. He saw the officers remove the toolbox but did not recall seeing them remove anything else from the room.
 

 Defendant testified he was on the way to the laundromat when he was stopped by Joslin. He denied possessing the soft drink can found in his car. He claimed ownership of the toolbox and said he had left it locked in the motel room, but denied it had drugs in it. He never told Joslin he sold drugs, nor did he tell him the location of the drugs. Defendant denied owning the scales found in the motel room.
 

 
 *793
 
 Defendant stated he used the pager to receive calls regarding rebuilding his car. The money he possessed was left from a payment from a trust fund for previous plumbing work he had performed. Defendant detailed his recent income and expenditures. He theorized that the confidential informant wanted to get possession of his car and therefore set him up.
 

 On surrebuttal, defendant added that his car had been impounded and he had received a notice of forfeiture for it.
 

 Rebuttal
 

 Defendant was never employed by one of the plumbers who he testified had employed him. Defendant did not work for the other plumbing company long enough to have received the amount of money he said he received from the trust fund. Deputy Joslin testified defendant told him he had drugs in the toolbox in the second motel room and was selling drugs to support himself.
 

 Discussion
 

 I.
 

 Standing to Challenge Search of Toolbox
 

 Prior to trial, defendant filed a written motion to traverse the affidavit in support of the warrant and to suppress evidence. He alleged the affidavit contained material misrepresentations and omissions. He also argued the police did not comply with knock-notice requirements when they entered the motel room. Defendant sought suppression of the physical evidence as well as suppression of statements he made.
 

 At the hearing on the motion, the court found the affidavit did not contain material omissions or misstatements. Defendant then raised the question whether the search of the motel room, which was not subject to the warrant, was valid. The court noted the defendant failed to raise this in his moving papers but presumed that would be one of the issues. The court then directed defendant to the issue of standing to object to the search of the motel room, noting defendant had not provided any evidence or authority on this point. The court suggested that defendant pursue that question. Defendant then testified he had not stayed in the room, but a female friend was staying there. On the day of the search, the friend gave him permission to leave his red toolbox in the room. The toolbox was padlocked and placed on the floor of the room. Defendant believed the toolbox was in a secure, private location.
 
 *794
 
 Defendant noted there was no one in the room when he left, the entry door was locked, and he had a key to the room.
 

 The People declined to present any evidence. The arguments and ruling on this issue were as follows:
 

 “Mr. Kinney [defense counsel]: Your Honor, somebody placing a . . . locked tool chest inside of a locked private room in a hotel with the tenant[’]s permission, under the expectation that it would not be . . . subject to people going in there, and looking in the case and so on, I believe has a reasonable expectation to privacy as to the content of that tool case.
 

 “The Court: Thank you.
 

 “Mr. McDaniel?
 

 “Mr. McDaniel [district attorney]: Certainly based on his testimony he doesn’t have a reason to expect privacy in that room.
 

 “He denies living there, staying there.
 

 “Uh, you know, just because he leaves something there, when he visits there sometime, is not an issue as to whether that room, itself, it can be searched or not.
 

 “The Court: Thank you.
 

 “If someone is not staying there, has no proprietary interest in it, simply leaves it there, and walks out of the room, that does not give rise to standing.
 

 “One does not have a legal expectation of privacy, under those circumstances.
 

 “And, the Court finds such to be the case.”
 

 Based on the court’s ruling, neither knock-notice nor consent was discussed.
 

 On appeal, defendant does not challenge the court’s ruling on the sufficiency of the affidavit, but argues the court erred in finding that he did not have standing to challenge the search of the motel room. Defendant argues he had standing to challenge the search of the entire room, including the toolbox.
 

 
 *795
 
 The People argue defendant failed to demonstrate a legitimate expectation of privacy in the motel room. Furthermore, assert the People, defendant never challenged the search of the toolbox, waiving the issue for appellate review, and had he properly raised the question of standing to challenge the search of the toolbox, the People would have introduced evidence of consent.
 

 In his moving papers in the lower court, defendant did not discuss standing. The trial court permitted him to present evidence and argument on the point. Defendant asserted a reasonable expectation of privacy as to the tool-box only. He did not argue he had a reasonable expectation of privacy in the room in general. By not arguing it below, defendant has waived the argument regarding the reasonable expectation of privacy in the room regarding seizure of the scales. Contrary to the People’s position, defendant expressly raised and argued the reasonable expectation of privacy in the locked toolbox.
 

 “An appellate court’s review of a trial court’s ruling on a motion to suppress is governed by well-settled principles. [Citations.]
 

 “In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] ‘The [trial] court’s resolution of each of these inquiries is, of course, subject to appellate review.’ [Citations.]
 

 “The court’s resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, viz., the reasonableness of the challenged police conduct, is also subject to independent review. [Citations.] The reason is plain: ‘it is “the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.” ’ [Citation.]”
 
 (People
 
 v.
 
 Williams
 
 (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].)
 

 The facts pertinent to the issue of standing here are undisputed, based solely on defendant’s testimony. If the court’s finding that defendant had “no proprietary interest in it” refers to the toolbox, that factual finding is unsupported. The only evidence on that subject presented at the suppression hearing established defendant as the owner.
 

 
 *796
 
 The Fourth Amendment to the United States Constitution “protects people from unreasonable government intrusions into their legitimate expectations of privacy.”
 
 (United States
 
 v.
 
 Chadwick
 
 (1977) 433 U.S. 1, 7 [53 L.Ed.2d 538, 545-546, 97 S.Ct. 2476].) The Fourth Amendment is not “intended to guard only against intrusions in the home” but protects “ ‘persons, houses, papers, and effects.’ ”
 
 (Id.
 
 at p. 8 [53 L.Ed.2d 546].) The question to be resolved in determining if a defendant has standing to object to a search is not whether he “had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched.”
 
 (United States
 
 v.
 
 Salvucci
 
 (1980) 448 U.S. 83, 93 [65 L.Ed.2d 619, 629, 100 S.Ct. 2547].) “While property ownership is clearly a factor to be considered in determining whether an individual’s Fourth Amendment rights have been violated, . . . property rights are neither the beginning nor the end of this Court’s inquiry.”
 
 (Id.
 
 at p. 91 [65 L.Ed.2d at pp. 627-628].)
 

 “[T]he question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during [the search]. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.”
 
 (Rakas
 
 v.
 
 Illinois
 
 (1978) 439 U.S. 128, 140 [58 L.Ed.2d 387, 399, 99 S.Ct. 421].) The Fourth Amendment protection depends “upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.”
 
 (Id.
 
 at p. 143 [58 L.Ed.2d at p. 401].)
 

 “A defendant bears the burden to show he had such an expectation. [Citations.] Factors to consider in the determination include ‘ “whether the defendant has a [property or] possessory interest in the thing seized or the place searched; whether he has the right to exclude others from that place; whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.” ’ [Citations.]”
 
 (People
 
 v.
 
 Hernandez
 
 (1988) 199 Cal.App.3d 1182, 1189 [245 Cal.Rptr. 513].)
 

 In
 
 People
 
 v.
 
 Root
 
 (1985) 172 Cal.App.3d 774 [218 Cal.Rptr. 182], the defendant was under surveillance for suspected cocaine sales.
 
 (Id.
 
 at p. 776.) He took a bag, “placed it in Cassotta’s car, closed the door, and walked away from the car; Cassotta then drove the car away.”
 
 (Id.
 
 at p. 778.) Cassotta was stopped and arrested. The officers retrieved the bag from his car. It contained cocaine.
 
 (Id.
 
 at p. 777.) The trial court granted defendant’s motion to suppress the evidence. The People appealed. The defendant did not argue he had an expectation of privacy in Cassotta’s car but argued he had a reasonable
 
 *797
 
 expectation of privacy in the contents of the bag.
 
 (Id.
 
 at p. 778.) The appellate court disagreed. Defendant’s relinquishment of the bag was inconsistent with the continuing expectation of privacy.
 
 (Ibid.)
 
 Also, “nowhere in the record is there evidence that this container was tied, stapled, taped shut or otherwise sealed from outside view, so as to indicate [defendant’s] expectation of privacy as to the contents of the bag.”
 
 (Id.
 
 at p. 779.) The appellate court reversed the trial court’s grant of the suppression motion because defendant did not meet his burden of proving he had a legitimate expectation of privacy in the bag.
 
 (Ibid.)
 

 In
 
 People
 
 v.
 
 Koury
 
 (1989) 214 Cal.App.3d 676 [262 Cal.Rptr. 870], defendant Hernandez was a visiting guest in a residence which was searched pursuant to a warrant. The officers searched his luggage pieces which were closed and locked. Hernandez claimed ownership of the luggage and alleged he had standing to challenge its search and seizure. Distinguishing Root, the appellate court found that Hernandez had standing to challenge the search of his luggage.
 

 “The containers here were a closed pouch, a locked briefcase and a locked suitcase. Such evidence, coupled with the factors he was legitimately present in the residence and was present during the search, is sufficient to show Hernandez had a legitimate expectation of privacy in those containers.” (214 Cal.App.3d at p. 691, fn. omitted.)
 

 In the recent case of
 
 People
 
 v.
 
 Martins
 
 (1991) 228 Cal.App.3d 1632 [279 Cal.Rptr. 687], the defendant had shipped a locked suitcase from her location in California to New Jersey. The appellate court determined that she had no reasonable expectation of privacy because: (1) she had shipped the luggage in the name of another person, absent anything either on its exterior or interior identifying herself with the property; (2) 3,000 miles separated her from the suitcase at the time of the search; and (3) she had surrendered possession to the shipping airlines and the party to whom the luggage was addressed, who in fact consented to the search.
 
 (Id.
 
 at p. 1637.)
 

 The present case bears little resemblance to the facts of either
 
 Martins
 
 or
 
 Root.
 
 It bears more similarity to the situation presented in
 
 Koury.
 
 Here, defendant had placed a padlocked toolbox in the locked motel room of his friend. Although defendant was not present when the search was conducted, he was in relatively close proximity, had a key to the premises, and left the toolbox in the unoccupied and locked room. Defendant took normal precautions to keep the contents of the box private and expected it would remain free from governmental intrusion.
 

 In
 
 United States
 
 v.
 
 Jeffers
 
 (1951) 342 U.S. 48 [96 L.Ed. 59, 72 S.Ct. 93], based on an anonymous tip, officers entered and searched a locked hotel
 
 *798
 
 room without a warrant and without consent. The room was rented by Jeffers’s aunt, although no one was present at the time of the search. The officers found a box containing codeine and later arrested Jeffers, who claimed ownership of the drugs. He had been given a key to the room and had his aunt’s permission to use the room at will and had often entered the room.
 
 (Id.
 
 at p. 50 [96 L.Ed.2d at pp. 63-64].) The United States Supreme Court found the seizure was in violation of the Fourth Amendment and Jeffers had standing to object to it.
 
 (Id.
 
 at pp. 51-52 [96 L.Ed.2d at pp. 64-65].)
 

 Jeffers
 
 made it clear that mere possession of a seized item cannot be a “substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched.”
 
 (United States
 
 v.
 
 Salvucci, supra,
 
 448 U.S. 83, 92 [65 L.Ed.2d at pp. 628-629].)
 

 “Although the method of analysis utilized in
 
 [Jeffers]
 
 does not survive
 
 Rakas, Rawlings [Rawlings
 
 v.
 
 Kentucky
 
 (1980) 448 U.S. 98] and
 
 Salvucci,
 
 the Supreme Court has endorsed the conclusion that [Jeffers] . . . had a reasonable expectation of privacy. In
 
 Jeffers,
 
 the authorities searched an apartment owned by the defendant’s two aunts and seized a cache of drugs owned by the defendant. The Court in
 
 Rakas
 
 remarked approvingly, that ‘[standing in
 
 Jeffers
 
 was based on Jeffers’ possessory interest in both the premises searched and the property seized.’ ”
 
 (United States
 
 v.
 
 Haydel
 
 (5th Cir. 1981) 649 F.2d 1152, 1155.)
 

 Similarly, in
 
 United States
 
 v.
 
 Haydel, supra,
 
 649 F.2d 1152, the defendant had a reasonable expectation of privacy in gambling records he kept in a cardboard box at his parents’ house under their bed.
 
 (Id.
 
 at p. 1154.) “Haydel’s parents had given him permission to use their room and had given him a key.”
 
 (Id.
 
 at p. 1155.) He did keep clothing at their home and had occasionally spent the night. The appellate court found, “it is clear from his actions that Haydel exhibited a subjective expectation that the contents of the box stored under his parents’ bed were to remain private.”
 
 (Ibid.)
 

 The case here is closely analogous to
 
 Jeffers
 
 and
 
 Haydel.
 
 In each of the three situations, the defendant had left his personal property in the room of a relative or friend, who had granted permission to use the room and given the defendant a key to the premises. The instant defendant’s padlocking of his toolbox presents even stronger evidence of defendant’s expectation of privacy in that particular object. Consequently, defendant demonstrated a reasonable expectation of privacy in the toolbox, located in an area in which he shared access as well as privacy with his friend; the trial court improperly
 
 *799
 
 denied Ms motion when it found he did not have standing to protest the search and seizure.
 

 The People urge that if the trial court had not made its finding that defendant did not have standing, the People would have introduced evidence of defendant’s consent. “[T]o reach the merits of that motion on this incomplete record, cut short because of the trial court’s finding there was no standing to proceed, would be to deny [defendant] a full and complete hearing on Ms suppression motion.”
 
 (People
 
 v.
 
 Koury, supra,
 
 214 Cal.App.3d 676, 691.)
 

 The erroneous denial of defendant’s suppression motion based on the court’s finding he did not have standing to object to the search of the toolbox requires us to reverse Ms conviction for possession of marijuana for sale.
 
 [1]
 
 The remaining convictions are not affected because they rest on the evidence seized from defendant’s person and Ms car based on a valid warrant.
 

 II.
 

 Restriction of Cross-examination of Deputy Joslin
 

 *
 

 Disposition
 

 Defendant’s conviction for possession of marijuana for sale (count III) is reversed. Should the People decide to further pursue tMs charge, defendant is entitled to challenge the validity of the search of the toolbox. Regardless of the ruling on a renewed motion to suppress, count III would then require retrial. In the event of retrial, we call the attention of the court and the
 
 *800
 
 parties to
 
 People
 
 v.
 
 King, supra,
 
 231 Cal.App.3d 493. In all other respects, the judgment is affirmed.
 

 Dibiaso, Acting P. J„ and Franson, J.,
 
 *
 
 concurred.
 

 Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.
 

 [1]
 

 We note there was also a small package of marijuana in the can seized from the car, as well as the tiny amount of marijuana seized from the pipe in defendant’s pocket. These items were not the subject of a separate count. The record does not establish which marijuana was utilized to support a finding of guilt for possession of marijuana for sale. Thus, the conviction cannot be affirmed based only on the marijuana found in the car. Furthermore, CALJIC No. 17.01, the unanimity instruction, was not given. (See
 
 People
 
 v.
 
 King
 
 (1991) 231 Cal.App.3d 493 [282 Cal.Rptr. 402].)
 

 *
 

 See footnote,
 
 ante,
 
 page 1353.