[No. C018919. Third Dist. Mar. 26, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFFORD BRADLEY THOMPSON, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 1 of the Discussion.

**COUNSEL**

Linda M. Leavitt, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

DAVIS, J.—A jury convicted defendant of six counts of perjury. (Pen. Code, § 118, subd. (a).) On appeal defendant contends the trial court erroneously instructed that the materiality element of perjury is a question of law for the court to decide. In light of a California Supreme Court decision issued while defendant's case has been on appeal, *People* v. *Kobrin* (1995) 11 Cal.4th 416 [45 Cal.Rptr.2d 895, 903 P.2d 1027], this contention is well taken. In the unpublished portion of this opinion, we will reverse for this instructional error.

Defendant also contests the warrantless search of his rented premises. In the published portion of this opinion, we will conclude that a harassment restraining order directing a tenant to stay away from his or her rented premises does not divest the tenant of standing to contest a search of those premises.

### BACKGROUND

Defendant committed each of the six counts of perjury by filling out employment applications for five group home facilities for adolescent boys and one application for a taxi driver permit. In those applications, defendant stated, under penalty of perjury, that he had never been convicted of a crime, when in fact he had five felony convictions and three misdemeanor convictions.

At trial, each of the employers testified from their own documents and, in many cases, from their personal experience with defendant that defendant had made these statements. A senior investigator with the California Department of Social Services, Robin Braafladt, testified that job applicants to group home facilities must send to state authorities, through the prospective employer, a criminal history statement and a set of their fingerprints.

At the hearing on defendant's motion to suppress, it was shown that defendant's landlord had obtained a harassment restraining order against defendant. When the landlord obtained this order, defendant was a paying tenant, under a rental agreement, in the landlord's boarding house. The restraining order, which was served on defendant, required defendant to stay 100 yards away from the landlord and his residence.

The restraining order failed to specify, in the section provided, any residential addresses for the landlord. At the suppression hearing, the landlord indicated that he primarily resides at the boarding house but occasionally lives elsewhere, including Nevada, where indeed he was during the time of the search.

On the day of the search, Detective Parker of the Sacramento County Sheriff's Department went to the boarding house on behalf of the landlord who had called the detective from Nevada. The landlord told Parker that he had obtained a restraining order to keep defendant out of the residence. The landlord also said that defendant was in and out of those premises in violation of the order. Parker confirmed that defendant had been served with a valid restraining order. The landlord told Parker that he (the landlord) had agreed to allow defendant to remove his property despite the restraining order. At the time of the search, there was no evidence that the landlord had lawfully evicted defendant.

Based on defendant's willful disobedience of the restraining order, Parker arrested defendant inside his bedroom at the boarding residence and searched the bedroom and part of the residence for the next hour and a half for "evidentiary purposes." Parker testified that he had entered defendant's locked bedroom earlier on the day of the arrest, but defendant was not there at the time. Parker returned to the residence after a neighbor informed him that defendant was on the premises loading items into a taxi. Parker also searched the taxi, including its locked trunk.

The trial court conducted an extensive hearing on defendant's motion to suppress. This hearing focused on defendant's standing to contest the search and seizure given the restraining order against him.

## DISCUSSION

### 1. *The Materiality Instruction**

. . . . . . . . . . . . . . . . . . . . . . . .

### 2. *The Restraining Order's Effect on Defendant's Standing to Contest the Search*

 The trial court ruled that defendant lacked standing to contest the search because the restraining order directed defendant to stay away from the boarding house. The court ruled that once the restraining order had been issued, defendant had a "reasonable short period of time" (five days would be more than ample, said the court) to remove his personal belongings. After that period of time, the court stated, defendant had no reasonable expectation of privacy in the boarding house and therefore had no standing to contest a search of any part of it. In short, the trial court ruled that the restraining order divested defendant of standing to contest the search and seizure because the order made him a trespasser. We disagree.

 Under the Fourth Amendment to the United States Constitution, people are protected from unreasonable government intrusions into their legitimate expectations of privacy. (*United States* v. *Chadwick* (1977) 433 U.S. 1, 7 [53 L.Ed.2d 538, 545-546, 97 S.Ct. 2476].) The Fourth Amendment pointedly guards against intrusions into the home. (See *People* v. *Ybarra* (1991) 233 Cal.App.3d 1353, 1360 [285 Cal.Rptr. 200]; see also *People* v. *Dumas* (1973) 9 Cal.3d 871, 881-882 [109 Cal.Rptr. 304, 512 P.2d 1208].) The constitutional protection for homes extends to all residential premises, including rooms in boarding houses. (*McDonald* v. *United States* (1948) 335 U.S. 451, 452-456 [93 L.Ed. 153, 156-159, 69 S.Ct. 191].)

 In determining whether a defendant has standing to contest a search, the foundational question is whether the defendant has a legitimate expectation of privacy in the place invaded. (*United States* v. *Salvucci* (1980) 448 U.S. 83, 92-93 [65 L.Ed.2d 619, 628-629, 100 S.Ct. 2547]; *Rakas* v. *Illinois* (1978) 439 U.S. 128, 143-144 [58 L.Ed.2d 387, 400-402, 99 S.Ct. 421]; *Rawlings* v. *Kentucky* (1980) 448 U.S. 98, 104-106 [65 L.Ed.2d 633, 641-643, 100 S.Ct. 2556].) A defendant bears the burden of showing he has such an expectation. (*People* v. *Ybarra, supra*, 233 Cal.App.3d at p. 1360.) The pertinent factors to consider include whether the defendant has a property or possessory interest in the thing seized or the place searched; whether he has the right to exclude others from that place; whether he has exhibited a

---

*See footnote 1, *ante*, page 1265.

subjective expectation that the place would remain free from governmental invasion; whether he took normal precautions to maintain his privacy; and whether he was legitimately on the premises. (*Ibid.; Rawlings* v. *Kentucky, supra,* 448 U.S. at p. 104 [65 L.Ed.2d at p. 641]; *People* v. *Hernandez* (1988) 199 Cal.App.3d 1182, 1189 [245 Cal.Rptr. 513].)

■ The restraining order did not deprive defendant of a legitimate expectation of privacy in his rented premises and his personal property therein. As such, the restraining order did not deprive defendant of standing to challenge the warrantless search and seizure in this case. (*Rakas* v. *Illinois, supra,* 439 U.S. at pp. 143-144 [58 L.Ed.2d at pp. 400-402]; *Rawlings* v. *Kentucky, supra,* 448 U.S. at pp. 104-106 [65 L.Ed.2d at pp. 641-643].) At the time of the search, defendant had a rental agreement for the premises which were searched. Pursuant to that agreement, he had a private bedroom with his own key. He had personal property in his bedroom, and also had personal property (apparently unlocked in a closed desk and file cabinet) in the shared part of the residence.

■ If a landlord wants to end a tenancy involuntarily after the tenant has taken possession of the rental premises, the landlord must take certain legal steps to do so. (See Civ. Code, § 1940 et seq.; Code Civ. Proc., §§ 715.010 et seq., 1159 et seq.; *Four Seas Inv. Corp.* v. *International Hotel Tenants' Assn.* (1978) 81 Cal.App.3d 604, 612 [146 Cal.Rptr. 531]; Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 1995) ¶¶ 7:1, 7:2 rev. #1, 1993.) Until these steps are taken, the tenant is entitled to peaceful possession of the rented premises and has the right to exclude anyone, including the landlord. (*Ibid.; Jordan* v. *Talbot* (1961) 55 Cal.2d 597, 604-605 [12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161].) Unless a tenant voluntarily vacates, a landlord must have a valid writ of execution or possession to re-acquire possession of the premises in the eviction context. (*Bedi* v. *McMullan* (1984) 160 Cal.App.3d 272, 276-277 [206 Cal.Rptr. 578]; see Code Civ. Proc., §§ 712.010, 715.010 et seq.)

■ In the present case, defendant had not been lawfully evicted. The landlord simply obtained a harassment restraining order directing defendant to stay away from the boarding house. The restraining order did not, and could not, effect a lawful eviction of the defendant. Even if the restraining order could be confused with a judgment effecting an eviction, there must be a valid writ of possession (or execution) and five days' notice to allow the tenant to voluntarily vacate the property. (*Bedi* v. *McMullan, supra,* 160 Cal.App.3d at p. 276; Code Civ. Proc., §§ 715.010, subd. (b)(2), 715.020, subd. (c), 1174, subd. (d).)

If defendant could no longer personally stay on the premises under the terms of the restraining order, he still retained, until he was lawfully evicted,

certain possessory rights pursuant to his rental agreement. For example, until he was lawfully evicted, defendant had a legal right peacefully to leave his personal property within his rented premises. (See *Jordan* v. *Talbot, supra,* 55 Cal.2d at p. 605; see also *Bedi* v. *McMullan, supra,* 160 Cal.App.3d at pp. 276-277.) The trial court's ruling that defendant lacked standing because the restraining order divested him of any legitimate expectation of privacy in his rented premises is contrary to the statutory and decisional authority cited above and would make such an order the equivalent of a lawful eviction. This would be a step toward rebuilding the road of self-help, the very road the eviction procedures were enacted to rip-up. (Code Civ. Proc., § 1159 et seq.; Friedman et al., Cal. Practice Guide: Landlord-Tenant, *supra,* ¶ 7.1; *Daluiso* v. *Boone* (1969) 71 Cal.2d 484, 495 [78 Cal.Rptr. 707, 455 P.2d 811]; *Jordan* v. *Talbot, supra,* 55 Cal.2d at p. 605; *Bedi* v. *McMullan, supra,* 160 Cal.App.3d at p. 276.) Therefore, the restraining order did not deprive defendant of standing to contest the search and seizure at issue here.

We emphasize that our holding is a narrow one. We simply conclude that the harassment restraining order against defendant did not divest him of standing to contest the search and seizure here. We have not considered any other standing issues regarding this search, or any justifications for it.[2]

## DISPOSITION

The judgment is reversed. Should defendant be retried, the harassment restraining order does not divest defendant of standing to contest the search and seizure in this case.

Blease, Acting P. J., and Morrison, J., concurred.

---

[2]Aside from ruling that the restraining order deprived defendant of standing to contest the search and seizure, the trial court noted in passing that Detective Parker acted reasonably and in good faith because the detective had the landlord's consent to enter the premises, and reasonably conducted an "inventory" search of defendant's personal property upon defendant's arrest. These issues of consent and inventory searching were not substantively addressed in the suppression hearing as justifications for Parker's search; that hearing, as we have noted, focused on the issue of standing in light of the restraining order directing defendant to stay away from the boarding house.