Filed 3/25/13  Jones v. Salvo CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PAMELA K. JONES, | B235515 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NS019359) |
| v. | |
| GAETANO SALVO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Michele E. Flurer, Judge.  Reversed.

Gaetano Salvo, in pro. per., for Defendant and Appellant.

Pamela K. Jones, in pro. per., for Plaintiff and Respondent.

_____

Appellant Gaetano Salvo rented a garage on property purchased by Pamela K. Jones. Without obtaining a writ of possession, Jones obtained a restraining order ordering Salvo to not harass Jones and to stay 100 yards away from Jones, her home, workplace, and vehicle, which dispossessed Salvo of possession of the garage. On appeal, Salvo contends that the trial court erred in issuing the restraining order because Jones failed to obtain a writ of possession after the court entered a judgment in her favor on an unlawful detainer complaint against him. We agree and reverse the order.

## BACKGROUND

In March 2011, Jones closed escrow on residential property located at 3503 South Kerckhoff Avenue, San Pedro, California (the property). She subsequently discovered that Salvo had possession of a "middle garage, attached to her home," pursuant to a "month-to-month garage rental agreement" that Salvo and a previous owner of the property had entered into in February 2010 (garage rental agreement). The garage rental agreement stated that the garage was to be used "only for storage." According to Jones, "Salvo was to have vacated the garage upon transfer of ownership. He did not vacate."

On March 23, 2011, Jones served Salvo with a 30-day "notice to vacate," requiring Salvo to vacate the property no later than April 19, 2011, 5:00 p.m., and limiting his access to the garage between the hours of 9:00 a.m. and 5:00 p.m. Subsequently, Jones concluded that Salvo was living in the garage because he purportedly "remained in the garage all hours of the day and night," including "midnight, 3:00 a.m., 5:00 a.m."; used Jones's address as a mailing address and rummaged through Jones's mailbox; collected water from her front yard hose in five-gallon water containers several times a week; and maintained a pet cat in the garage. As a result, Jones allegedly suffered "emotional distress, with feelings of her being violated by a stranger, compromising her safety." Jones served Salvo with a three-day notice to quit on March 29, 2011. Salvo continued to reside in the garage, which "created health and safety concerns for Jones," supposedly causing Jones "*even more* emotional distress."

On April 27, 2011, Jones filed an unlawful detainer complaint against Salvo, which stated that Salvo "is in possession of the premises located at . . . Middle garage at

2

3503 S. Kerckhoff Av., San Pedro, CA 90731 (storage only)."[1] On May 27, 2011, the trial court entered judgment in favor of Jones on her unlawful detainer action against Salvo and ordered that she recover from him "the restitution and possession" of the garage.

On June 1, 2011, even though Jones had not obtained a writ of execution, at Jones's request, police officers removed Salvo from the garage and padlocked the garage. The officers advised Salvo that he could make arrangements through the Los Angeles Police Department to collect his personal belongings. That evening, Salvo slept in his car in front of the property. Early the next morning, Jones discovered that Salvo had "*broken in to the garage*." She summoned police, who arrested Salvo for "breaking and entering, destruction of property, and criminal trespass." On June 3, 2011, pursuant to Code of Civil Procedure section 527.6 and based on a "credible threat of violence," the trial court issued a temporary restraining order ordering Salvo to not harass Jones and to stay 100 yards away from Jones, her home, workplace, and vehicle.[2] On June 29, 2011, Salvo filed an answer stating, "I was in legal po[s]session of my premises pending completion of an u.d. procedure of due process (writ of po[s]session [and] sheriff's notice to vacate)."

On July 5, 2011, the trial court issued a "Restraining Order After Hearing to Stop Harassment," ordering Salvo to not harass Jones and to stay 100 yards away from Jones, her home, workplace, and vehicle. The order stated it was to expire on July 4, 2012.

---

[1] We take judicial notice of the records in the matter of *Jones v. Salvo* (Super. Ct. L.A. County, 2011, No. 11D00394). (Evid. Code, § 452, subd. (d).)

[2] Undesignated statutory references are to the Code of Civil Procedure. Section 527.6, subdivision (b)(3) provides that a person may seek a restraining order and an injunction prohibiting harassment where the restrained person has engaged in "a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."

From June through September 2011, Salvo purportedly lived in his car and loitered outside the 100-yard boundary of the property.  Salvo appealed.

## DISCUSSION

**Jones's failure to obtain a writ of possession requires reversal of the restraining order**

Salvo contends that the trial court erred in issuing the restraining order against him because Jones had failed to obtain a writ of possession after the court had entered a judgment in her favor on her unlawful detainer complaint against him.  He is correct.

"'Unlawful detainer is a unique body of law and its procedures are entirely separate from the procedures pertaining to civil actions generally.' [Citation.]  Sections 1159 through 1179a comprise what is commonly known as the Unlawful Detainer Act; the statutes are 'broad in scope and available to both lessors and lessees who have suffered certain wrongs committed by the other.' [Citation.]" (*Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1424.)  Thus, "'"a tenant is entitled to a three-day notice to pay rent or quit which may be enforced by summary legal proceedings (Code Civ. Proc., § 1161) . . . .""'" (194 Cal.App.4th at p. 1425.)  Upon service of three days' notice to quit on the person in possession, the landlord "shall . . . be entitled to restitution of possession of the demised premises under this chapter." (§ 1161, subd. 4.)

"After entry of a judgment for possession or sale of property, a writ of possession or sale shall be issued by the clerk of the court upon application of the judgment creditor and shall be directed to the levying officer in the county where the judgment is to be enforced." (§ 712.010.)  The writ of possession shall state that "if the real property is not vacated within five days from the date of service of a copy of the writ on the occupant or, if the copy of the writ is posted, within five days from the date a copy of the writ is served on the judgment debtor, the levying officer will remove the occupants from the real property and place the judgment creditor in possession." (§ 715.010, subd. (b)(2).)  "If the judgment debtor . . . [does] not vacate the property within five days from the date of service . . . the levying officer shall remove the occupants from the property and place

4

the judgment creditor in possession." (§ 715.020, subd. (c).) "Until these steps are taken, the tenant is entitled to peaceful possession of the rented premises and has the right to exclude anyone, including the landlord." (*People v. Thompson* (1996) 43 Cal.App.4th 1265, 1270 (*Thompson*).)

A judgment of possession only establishes entitlement to possession. (*Bedi v. McMullan* (1984) 160 Cal.App.3d 272, 276.) That a judgment for possession has been rendered does not mean that eviction is authorized because, for instance, the judgment may have been stayed, the tenant may have been granted relief from the judgment, or the occupant may not be named in the judgment. (*Id*. at p. 277.) Thus, "[a] valid writ of execution is the ultimate indispensable element of the legal process by which a party entitled to possession of the property acquires possession." (*Id*. at p. 276) The writ of execution is designed to avoid forcible eviction and informs the levying officer and occupants that the eviction is judicially authorized. (*Ibid*.)

In the present case, on May 27, 2011, the trial court entered judgment in favor of Jones on her unlawful detainer action against Salvo and ordered that she recover from him "the restitution and possession" of the garage. Jones then could have applied for a writ of possession. But she did not. Instead, on June 1, 2011, with the assistance of police officers, Jones removed Salvo from the garage and padlocked the garage at a time when Salvo had the right to possession of the garage.

And because Salvo had the right to possession of the garage, the trial court erred in issuing a restraining order based on Salvo's attempt to maintain possession of the garage.

*Thompson* offers guidance. In *Thompson*, the Court of Appeal held that the defendant had not been evicted lawfully from rented premises and therefore had standing to contest a search of those premises. (*Thompson*, *supra*, 43 Cal.App.4th at p. 1267.) There, "[t]he landlord simply obtained a harassment restraining order directing defendant to stay away from the boarding house. The restraining order did not, and could not, effect a lawful eviction of the defendant. Even if the restraining order could be confused with a judgment effecting an eviction, there must be a valid writ of possession (or

5

execution) and five days' notice to allow the tenant to voluntarily vacate the property."
(*Id*. at p. 1270.)

Here, the restraining order was based on the premise that Salvo did not have the right to possession of the garage and that therefore his attempt to maintain possession of the garage caused Jones to suffer emotional distress. But because Salvo had the right to possession of the garage, we conclude that the restraining order was issued erroneously and must be reversed.

## DISPOSITION

The July 5, 2011 restraining order is reversed. Each party to bear their own costs on appeal.

NOT TO BE PUBLISHED.


                                                MALLANO, P. J.

We concur:


CHANEY, J.


JOHNSON, J.


6