Filed 9/9/13  P. v. Wright CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER WRIGHT,<br><br>　　　　Defendant and Appellant. | A132689<br><br>(Solano County<br>Super. Ct. No. VCR207200) |

　　　　Defendant was convicted of child molestation and possession of child pornography after a young girl he was babysitting accused him of molesting her.  He contends a warrantless police entry into his bedroom was unreasonable, his attorney rendered ineffective assistance of counsel for various reasons, the prosecutor committed misconduct, and the victim's hearsay statement was improperly admitted.  We affirm.

## I.  BACKGROUND

　　　　Defendant was charged in a consolidated information, filed June 14, 2010, with committing a lewd act upon a child under the age of 14 (Pen. Code, § 288, subd. (a)) and possession of child pornography (Pen. Code, § 311.11, subd. (a)).

　　　　Defendant rented a room in a large home owned by the parents of the victim, A., an 11-year-old girl.  In return for a reduction in rent, defendant babysat A. and her younger brother a few hours per week.  On the night of the molestation, A.'s parents had gone out to dinner, leaving A. and her brother in defendant's care.

　　　　That night, defendant, A., and her brother watched television in one room, while defendant's daughter, who stayed with him some nights, was in and out.  At some point,

while defendant's daughter was in his room, A. entered and told the daughter that defendant had touched A. between her legs, underneath her clothing, while she was lying near him on the couch. A. said this "had just happened." She also said she felt sick, and she "was starting to cry." When defendant entered the room a few minutes later, A. began to cry again.

Within a half-hour, A.'s parents returned to the house. A. told them, with a "horrible expression" on her face, that "something had happened to her." She then "broke down" and began "really crying." A.'s parents promptly called the police.

When the police arrived, defendant was in his room. Based on the information provided when they arrived, the officers decided to arrest defendant and went to his room.[1] When they knocked on the closed door and announced their presence, there was no answer. Finding the door unlocked, the police entered. Defendant was lying on a mattress. Next to him was a laptop computer. Upon approaching defendant, one officer noticed a pornographic video clip of a female child on the screen of the laptop. He closed the computer down and seized it. Later examination of the laptop's hard drive memory revealed approximately 200 photographs and 34 videos of children between the ages of 5 and 16 involved in "pretty graphic" sexual acts with adults.

A. was taken to the hospital, where she was seen by an experienced sexual assault examiner. The examiner took swabs and hair samples from A. Because A. told the examiner that defendant had placed his finger in her vagina, A.'s vaginal area was also examined. The examiner found a "small abrasion" that was "consistent with an individual having a finger inside that area," although it also could have arisen in other ways. The examiner later collected swab samples from defendant's hands, scrapings from beneath his fingernails, and a saliva sample. Genetic analysis of the swab from one of defendant's hands showed the presence of DNA from "at least" two people, identified as defendant and, to a very high level of confidence, A.

---

[1] At the preliminary hearing, an officer said they were told defendant "had placed his fingers inside the victim's vagina." This specific information was not repeated at trial.

Defendant was convicted of both counts and sentenced to an aggregate term of six years eight months in prison.

## II.  DISCUSSION

### A.  *Seizure of the Laptop*

Defendant contends evidence from his computer should have been suppressed because there was no justification for the officers' warrantless entry into his bedroom.[2]

There is no doubt defendant had a protectable Fourth Amendment interest in his bedroom (*People v. Thompson* (1996) 43 Cal.App.4th 1265, 1269), and the Attorney General does not contend otherwise.  " 'It is axiomatic that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." ' [Citation.]  A warrantless entry is 'presumptively unreasonable.'  [Citation.]  This presumption can be overcome by a showing of one of the few 'specifically established and well-delineated exceptions' to the warrant requirement [citation], such as ' "hot pursuit of a fleeing felon, or imminent destruction of evidence, . . . or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling" ' [citation].  The United States Supreme Court has indicated that entry into a home based on exigent circumstances requires *probable cause* to believe that the entry is justified by one of these factors such as the imminent destruction of evidence or the need to prevent a suspect's escape." (*People v. Celis* (2004) 33 Cal.4th 667, 676.)

In reviewing the denial of a motion to suppress evidence under the Fourth Amendment, we accept as true any facts found by the trial court and supported by substantial evidence, but we exercise independent judgment in evaluating the constitutionality of the warrantless search or seizure, based on those facts.  (*People v. Guzman* (2011) 201 Cal.App.4th 1090, 1096.)  "We will uphold the magistrate's ruling if it 'is correct on any theory of the law applicable to the case, even if the ruling was made for an incorrect reason.' "  (*Ibid*.)

---

[2] Defendant moved for suppression on this ground in the trial court.  The motion was denied after an evidentiary hearing at the time of the preliminary hearing, and a renewed motion was denied just prior to trial.

We agree with the Attorney General that the officers' warrantless entry into defendant's bedroom was justified by the imminent risk he would take some action to destroy any DNA evidence that might have been present on his person. As they knocked on the door of defendant's room, the officers were aware that defendant might have placed his fingers inside A.'s vagina. Because this action would likely have resulted in the presence of traces of A.'s DNA on defendant's hand, the presence or absence of A.'s genetic material could be critical evidence in the case. It was therefore important to ensure that defendant did not take some action to remove any DNA that might be present, measures as simple as cleaning or wiping his hands. Yet because defendant was unresponsive behind a closed door, the officers had no way to monitor his actions to ensure he did not attempt to remove this material. Defendant's strong motive to remove evidence of his crime and his failure to respond to their knock, combined with the ease with which such removal could be accomplished, provided the police with probable cause to believe destruction of evidence was imminent.

The situation is similar to a warrantless entry to test for the presence of alcohol in the blood of a DUI suspect, approved by the Supreme Court in *People v. Thompson* (2006) 38 Cal.4th 811 (*Thompson*). In that case, the defendant had been observed driving erratically by witnesses. Police found his car parked in front of his house, the front door of which was open, and a man fitting the driver's description and smelling strongly of alcohol approached the door. When the man refused to cooperate, the police entered and detained him. (*Id.* at pp. 816–817.) The Supreme Court held that the warrantless entry for purposes of arrest was justified by the potential destruction of evidence in the form of the alcohol level in the defendant's blood. As the court reasoned, the evidentiary value of a blood test could be destroyed either by the passage of time, since the body metabolizes alcohol, by defendant's ingestion of more alcohol, which would mask the level while he was driving, or by defendant's leaving the officer's sight, since that would permit him to

4

claim to have ingested more alcohol, which together supported the warrantless entry.[3] (*Thompson*, at pp. 825–827.)

More directly applicable is *State v. Parker* (2012) 48 Kan.App.2d 68 (*Parker*), in which a similar rationale was used to deny the suppression of DNA samples taken without a warrant from a defendant suspected of sexually assaulting a hospital patient. The defendant had already been detained and placed in handcuffs at the time. (*Id.* at pp. 71, 73.) Yet the court found exigent circumstances because the defendant "could have wiped his hand on his pants before officers could get a warrant, potentially destroying fragile DNA evidence." (*Id.* at p. 86; see also *Cupp v. Murphy* (1973) 412 U.S. 291, 296 [warrantless scraping under defendant's fingernails was justified when he was seen attempting to rub off evidence].)

Defendant argues the prosecution presented no evidence to support this theory and contends he had no opportunity to present evidence countering the argument, without specifying what type of evidence he would have submitted.[4] (See *People v. Brown* (2004) 33 Cal.4th 892, 901.) It is common knowledge, however, that DNA is a complex organic molecule subject to chemical degradation—as *Parker* characterized it, "fragile." (*Parker, supra,* 48 Kan.App.2d at p. 86.) Further, it does not require expert testimony for a court to conclude that residual DNA, present on the surface of a defendant's skin, can

---

[3] The United States Supreme Court has since held that the metabolism of alcohol in the blood does not justify a per se exception to the warrant requirement in a " 'routine DWI case.' " (*Missouri v. McNeely* (2013) 133 S.Ct. 1552, 1557, 1560–1563 ["while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, . . . it does not do so categorically"].) Because the defendant in *Thompson*, unlike the defendant in *McNeely,* had not been detained and could have taken affirmative steps to interfere with the evidence of his blood alcohol level, as our Supreme Court noted, *Thompson* presumably continues to be good law.

[4] The prosecution first raised this theory in an opposition to a motion to dismiss, filed after the preliminary hearing but well before the commencement of trial. Defendant therefore did have an opportunity to present evidence in connection with his renewed motion prior to trial. While the trial court did not articulate this justification in denying the renewed motion, we are not limited by the court's rationale. (*People v. Guzman*, *supra*, 201 Cal.App.4th at p. 1096.)

be washed or wiped off, more or less in an instant.  (*Ibid*.)  In the absence of some suggestion by defendant of the type of evidence he would have presented to counter this self-evident proposition, we find no evidentiary bar to considering this theory.

Defendant also points out that the arresting officers did not themselves articulate this explanation for their conduct.  When assessing the validity of a search or seizure, however, we apply an "objective standard," rather than relying on the "subjective state of mind" of the officers.  (*People v. Woods* (1999) 21 Cal.4th 668, 680; see also *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1045 [" 'Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.' [Citation.]  Probable cause is measured by an objective standard based on the information known to the arresting officer, rather than a subjective standard that would take into account the arresting officer's actual motivations or beliefs."].)

Finally, defendant contends the police lacked probable cause to believe the destruction of evidence was imminent because defendant, unseen behind the door, had provided no indication he intended to remove the DNA.  We conclude defendant's unexplained failure to respond promptly to the police knock in these circumstances sufficiently raised the possibility of imminent destruction to provide probable cause, given the ease with which DNA evidence can be removed.  (See *Parker, supra,* 48 Kan.App.2d at p. 86.)

**B.  *Ineffective Assistance of Counsel***

**1.  *Hearsay Testimony by the Sexual Assault Examiner***

Defendant contends his attorney rendered ineffective assistance by failing to object to the statement by the sexual assault examiner that A. told her defendant had placed his finger in A.'s vagina.[5]

---

[5] Defendant contends an objection should have been made because the statement was excludable under *Crawford v. Washington* (2004) 541 U.S. 36.  We need not resolve the issue, since, as discussed below, defendant has not shown prejudice due to counsel's alleged ineffective assistance.

"To prevail on [a claim of ineffective assistance of counsel], petitioner must prove ' "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant." ' [Citation.] ' "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' [Citation.] If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient." (*In re Crew* (2011) 52 Cal.4th 126, 150.)

We decline to decide whether counsel's failure to object to this statement constituted deficient performance because we conclude there is no reasonable probability the outcome of the trial would have been different had the statement been excluded. By the time of the sexual assault examiner's testimony, the jury was already aware that A. had told defendant's daughter he had touched A. between her legs, underneath her clothing. The jury was also aware A. had told her parents something that caused them to call the police. Following the examiner's testimony, the jury was told DNA consistent with A.'s DNA had been found on one of defendant's hands, confirming he had some type of contact with A. In light of this evidence, A.'s statement to the examiner largely reiterated information already before the jury. While the nurse's testimony supplemented A.'s statement to defendant's daughter by referring to vaginal penetration, the fact of penetration was not a necessary element of the crime and was not so prejudicial, in light of other testimony, as to raise a reasonable probability that it affected the outcome of the trial.

### 2. *Defendant's Daughter's Testimony Regarding Pornography*

During cross-examination, defense counsel asked defendant's daughter whether she had ever seen pornography on defendant's laptop. She responded that she recalled waking up at night and seeing pornography on the laptop screen, apparently after defendant had fallen asleep while watching it. Defense counsel confirmed the pornography she saw had involved only adults, not children. Defendant contends his

7

attorney rendered ineffective assistance of counsel by eliciting this testimony from his daughter.

We again need not decide whether this line of inquiry constituted deficient performance because we find no prejudice.[6] The arresting officer testified that defendant was viewing pornography on the laptop at the time he was arrested, and a large quantity of pornography was found when police examined the laptop. The testimony of defendant's daughter added nothing material to this testimony. While she did suggest defendant viewed the pornography in her presence, after he believed she had fallen asleep, that fact is not sufficiently prejudicial as to have affected the outcome of the trial on either charge.

### 3. *Failure to Seek Severance*

Defendant concedes there was no substantial basis to oppose consolidation of the two charges at the time consolidation was granted,[7] but he contends his attorney rendered ineffective assistance by not moving to sever the charges after the prosecutor suggested A. might not testify at trial. Defendant argues severance was appropriate because the charge of possession of pornography "became dramatically stronger than the other" charge upon A.'s decision not to testify.

" ' " ' "The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." [Citation.] [¶] "The determination of prejudice is necessarily dependent on the particular circumstances of each individual case, but certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial." [Citation.] Refusal to

_____

[6] While we find it unnecessary to decide whether counsel's inquiry was deficient, we note that the questioning likely was intended to serve the tactical purpose of countering the prosecution claim that defendant had a deviant sexual interest in children. (See *People v. Vines* (2011) 51 Cal.4th 830, 876 [conviction will not be reversed on direct appeal for ineffective assistance unless record affirmatively reveals counsel's conduct had no rational tactical purpose].)

[7] Defendant states "his trial attorney's failure to object to the joinder of the different charges was within the range of competence expected of a criminal defense attorney."

8

sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case. [Citations.]' " ' [Citations.] [¶] 'Our determination whether defendant was prejudiced by joinder requires us first to examine whether evidence on each of the joined charges would have been admissible, under Evidence Code section 1101, in separate trials on the others. If so, any inference of prejudice is dispelled. [Citation.] Conversely, however, the absence of cross-admissibility does not, by itself, demonstrate prejudice.' " (*People v. Vines, supra,* 51 Cal.4th at pp. 855–856.)

We decline to decide whether counsel's failure to seek severance constituted deficient performance because we find no likelihood of a different result had he done so. Even if, as defendant contends, the pornography charge was stronger than the molestation charge, the evidence of the child pornography on defendant's laptop would have been admissible in the molestation case. As defendant concedes, Evidence Code section 1108 authorized admission of evidence of the possession charge if it was not otherwise excludable under section 352. Given the strong probative value of the possession of child pornography by a defendant accused of child molestation, it is highly unlikely a motion to exclude under section 352 would have been successful. There is therefore no reason to believe the ultimate outcome on the molestation charge would have been different if severance were granted. Accordingly, the failure of defense counsel to seek severance was not prejudicial to defendant.

## C. *Prosecutorial Misconduct*

Defendant contends the prosecutor committed prejudicial misconduct in eliciting testimony and in closing argument.

The first example of alleged misconduct occurred when A.'s mother was asked by the prosecutor to explain A.'s absence from the trial. The mother responded, "[A]t the

very beginning of this, I know I've spoken to you about this, my husband and I were just shocked and outraged. We were really harassed by the defense to the point where the defense attorney is coming over to our house— [¶] . . . [¶] —and questioning our children." The court intervened, asking, "Without your permission?" The mother answered, "Absolutely, and I was so livid, I mean, it was so upsetting." The next morning, the court struck the testimony, instructing the jury to disregard it as irrelevant.

The second incident occurred during the prosecutor's cross-examination of a sexual assault examiner who testified as an expert witness for the defense. The prosecutor asked the witness whether she had prepared a report. She responded that a report was prepared only after the prosecutor had requested one.

Finally, defendant contends the prosecutor engaged in improper closing argument by misstating the nature of the DNA evidence. Although the witness who had performed the DNA analysis said defendant's sample contained DNA from "at least" two individuals, the prosecutor argued the DNA recovered was from "only" two individuals, defendant and A. He then commented it was "interesting" that no DNA was found from defendant's daughter, characterizing the absence of the daughter's DNA and the presence of A.'s DNA to be "compelling evidence." As defendant correctly argues, because the police had not tested the sample for DNA from defendant's daughter, it was entirely unsurprising that her DNA was not found.

"A prosecutor's conduct violates the federal Constitution when it infects the trial with such unfairness as to make the resulting conviction a denial of due process. Conduct by a prosecutor that does not rise to this level nevertheless violates California law if it involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury. [Citations.] To preserve a prosecutorial misconduct claim for appeal, the defendant ' "must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety" ' unless doing so would be futile or an admonition would not cure the harm." (*People v. Whalen* (2013) 56 Cal.4th 1, 52.) "In order to be entitled to relief under state law, defendant must show that the challenged conducts raised a reasonable likelihood of a more favorable verdict. In order to be

10

entitled to relief under federal law, defendant must show that the challenged conduct was not harmless beyond a reasonable doubt." (*People v. Blacksher* (2011) 52 Cal.4th 769, 828, fn. 35.)

Two of the examples of misconduct cited above, the prosecutor's questioning of the defense expert and his comments in closing argument, were forfeited when defendant's counsel failed to object and seek an admonishment. There is no reason to believe the request would have been futile or an admonition would not have cured any harm.

While we are inclined to conclude none of this conduct was sufficiently serious to constitute prosecutorial misconduct under either the state or federal Constitutions, we need not finally decide because the conduct was not prejudicial. The mother's complaint about defense counsel was stricken by the court, and no further mention was made at trial of defense counsel's possible harassment of A. Both that comment and any implication from the prosecutor's questioning of the defense expert were brief and had no direct bearing on defendant's guilt. While it is true, as the Attorney General seems to concede, that the prosecutor's argument about the DNA evidence was wrong and misleading, defense counsel was able to correct the errors in his closing. Further, the errors were unrelated to the fundamental probative significance of the DNA evidence: A.'s DNA was found on defendant's hand, as would be expected had he molested her. Any effect from these separate incidents was minimal, at best, in light of the strong evidence of defendant's guilt and was unlikely to have had any influence on the jury's verdict.

**D.** *Admission of A.'s Statement to Defendant's Daughter*

Defendant contends the trial court erred in admitting as a spontaneous statement A.'s claim to defendant's daughter that she had been molested.

"A 'spontaneous utterance[]' is considered trustworthy, and admissible at trial despite its hearsay character, because 'in the stress of nervous excitement, the reflective faculties may be stilled and the utterance may become the instinctive and uninhibited expression of the speaker's actual impressions and belief.' [Citation.] Evidence Code section 1240 provides that '[e]vidence of a statement is not made inadmissible by the

hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception.' For admission of a spontaneous statement, ' "(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." [Citations.]' [Citation.] Whether the statement was made before there was 'time to contrive and misrepresent' is informed by a number of factors, including the passage of time between the startling occurrence and the statement, whether the statement was a response to questioning, and the declarant's emotional state and physical condition." (*People v. Clark* (2011) 52 Cal.4th 856, 925.) We review a trial court's decision to admit a hearsay statement under Evidence Code section 1240 for abuse of discretion. (*People v. Poggi* (1988) 45 Cal.3d 306, 319.)

We find no abuse of discretion in the trial court's conclusion that A.'s statement to defendant's daughter satisfied these criteria. Sexual molestation by an adult is unquestionably a sufficiently disturbing experience to induce nervous excitement in a child. The statement to defendant's daughter was unsolicited and occurred very soon after the molestation. A.'s tears and her feeling of nausea suggest that she was still in the grip of the trauma.

Defendant argues the conclusion that A.'s statement satisfied the elements of Evidence Code section 1240 was "based on circular reasoning" because the statement itself was used to establish some of the foundational requirements for its admission. It is well-established that a spontaneous statement itself can prove the occurrence of the act causing the statement and the declarant's perception of it; there is no requirement of independent corroboration. (*People v. Hughey* (1987) 194 Cal.App.3d 1383, 1394; *People v. Jones* (1984) 155 Cal.App.3d 653, 661.) This is in the nature of hearsay, which is a statement of another used to prove the truth of the matter asserted. By excepting

12

spontaneous statements from the ordinary rule banning hearsay, section 1240 allows the statement of a victim of an incident to be admitted to prove the incident occurred.

Yet while a spontaneous statement can be used to prove its contents—that an exciting event occurred and was perceived by the declarant—defendant is wrong that the other foundational elements of Evidence Code section 1240 are derived from the statement itself. Rather, the fact that the statement was made while the declarant was still under the stress of the event is judged in part by the declarant's appearance and conduct. The type of emotional distress manifested by A. is commonly accepted as proof that a declarant was under the stress of excitement caused by a shocking event. (E.g., *People v. Gonzales* (2012) 54 Cal.4th 1234, 1271 [declarant crying and "upset"].)

*People v. Phillips* (2000) 22 Cal.4th 226, on which defendant relies, does not hold to the contrary. In that case, the purported spontaneous statement was ruled inadmissible because it provided no indication the declarant had perceived the event personally, rather than having been told about it. The statement therefore risked being hearsay upon hearsay. (*Id.* at p. 235.) That risk was not present here.

Defendant also contends the trial court erred in failing to exclude A.'s statement under Evidence Code section 352 as more prejudicial than probative. The only prejudice cited by defendant, however, is the prejudice that would flow from the jury's acceptance of the truth of A's statement. This does not constitute "prejudice" for purposes of section 352. (*People v. Eubanks* (2011) 53 Cal.4th 110, 144 [" ' "The prejudice which . . . Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. [Citations.] "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors." ' "].)

We also find no merit in defendant's claim that admission of A.'s statement, which he acknowledges was consistent with the Sixth Amendment under *Crawford v. Washington, supra,* 541 U.S. 36, was so unfair as to violate due process. Given the circumstances, A.'s claim was sufficiently credible to justify its presentation to the jury.

13

(See *People v. Livingston* (2012) 53 Cal.4th 1145, 1163.)  Nor did the cumulative effect of all the errors claimed by defendant deprive him of due process.

## III.  DISPOSITION

The judgment of the trial court is affirmed.


_____
Margulies, Acting P.J.


We concur:


_____
Dondero, J.


_____
Banke, J.